

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-28-1997

# Gotha v. United States

Precedential or Non-Precedential:

Docket 96-7442

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Gotha v. United States" (1997). *1997 Decisions.* Paper 112.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/112

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 28, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-7442

SHEILA GOTHA,
<u>Appellant</u>

v.

UNITED STATES OF AMERICA,
<u>Appellee</u>

APPEAL FROM THE
DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX
(D.C. Civ. No. 95-cv-00002)

Argued April 7, 1997

Before: BECKER, ROTH and WEIS, <u>Circuit Judges</u>

Filed May 28, 1997

Diane M. Russell, Esquire (ARGUED)
Holt & Russell
2132 Company Street, Suite 2
Christiansted, St. Croix
U.S.A. Virgin Islands 00820

<u>Counsel for Appellant</u>

Frank W. Hunger, Esquire
Assistant Attorney General
Robert S. Greenspan, Esquire
Steve Frank, Esquire (ARGUED)
United States Department of Justice
Civil Division, Appellate Staff
10th & Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

James A. Hurd, Jr., Esquire
United States Attorney
Michael A. Humphreys, Esquire
Office of United States Attorney
1108 King Street, Suite 201
Christiansted, St. Croix
U.S.A. Virgin Islands 00820

Counsel for Appellee

**OPINION OF THE COURT**

WEIS, Circuit Judge.

In this appeal we conclude that the United States Navy's failure to provide routine safeguards on a footpath leading to a structure under its control does not implicate the discretionary function exception to the Federal Tort Claims Act. See 28 U.S.C. § 2680(a). Therefore, the claim of personal injury based on the plaintiff's fall on the path satisfies the jurisdictional facet of the Act and the judgment dismissing the complaint will be reversed.

At the time of the accident, plaintiff, Sheila Gotha, was an employee of the Martin-Marietta Company, which was performing work for the Navy at the land base of the Underwater Tracking Range located on St. Croix, Virgin Islands. The facility consists of upper and lower sites separated by a public road.

On February 20, 1994, at approximately 5:00 a.m., plaintiff was walking from the upper portion of the facility to the lower sector to deliver material to an office trailer.

2

She and a co-employee took the unpaved path that led directly to the trailer. The path was approximately fifteen to twenty feet in length and dropped downward at an angle of approximately fifty-four degrees. There was no lighting in the area, and as plaintiff descended the path in the darkness, she fell and injured her ankle.

Plaintiff sued the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80, alleging negligence on the part of the government in failing to provide a safe access to the trailer. Specifically, her complaint alleged that the government was negligent in failing to provide a stairway with handrails and for neglecting to provide sufficient lighting at the scene. The district court, however, dismissed the action based on lack of subject-matter jurisdiction, concluding that the government was protected by sovereign immunity because the conduct alleged came within the discretionary function exception to liability under the Federal Tort Claims Act, 28 U.S.C. § 2680(a).

Based on testimony of Navy personnel, the court rejected the government's first defense of delegation of responsibility to Martin-Marietta for the condition of the premises. After analyzing the discretionary function exception, the court decided that no statute or regulation mandated the Navy to make the repairs or undertake the construction measures that plaintiff alleged were necessary.

The court, however, determined that the exception applied because the Navy had based its decision not to improve the path on "a complex set of policy imperatives." These factors included "the effect of any construction on existing military hardware," as well as "budgetary constraints and safety concerns." In conclusion, the court stated: "A policy decision was made concerning the installation of steps on the [Underwater Tracking Range] premises and that decision is protected by the discretionary function exception."

I.

The government's motion to dismiss was based on Federal Rule of Civil Procedure 12(b)(1), lack of subject-matter jurisdiction. Because the Navy's motion was not

3

merely a facial challenge to the district court's jurisdiction, the court was not confined to allegations in the plaintiff's complaint, but could consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction. See Mortensen v. First Fed. Sav. & Loan Ass'n., 549 F.2d 884, 891-92 (3d Cir. 1977) (because a trial court's very power to hear a case is at issue in a factual 12(b)(1) motion, a court is free to weigh evidence beyond the plaintiff's allegations). We exercise plenary review over the applicability of the discretionary function exception. Fisher Bros. Sales, Inc. v. United States, 46 F.3d 279, 282 (3d Cir. 1995) (en banc).

II.

The Federal Torts Claims Act is a partial abrogation of the federal government's sovereign immunity that permits suits for torts against the United States. The Act, however, imposes a significant limitation by providing that no liability may be asserted for a claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

The statute does not define "discretionary function or duty" and these terms have led to extensive litigation over the scope of the government's liability to tort claimants. It is clear that if the word "discretionary" is given a broad construction, it could almost completely nullify the goal of the Act. United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984) (exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.").

The statutory language does not apply to every situation in which there is an actual option to choose between courses of action or inaction. Rather, as the Supreme Court has stated, the discretion that is immunized from "second-guessing" in the tort suit context applies to "legislative and administrative decisions grounded in social, economic, and political policy." Id. at 814.

4

In Berkovitz v. United States, 486 U.S. 531, 537 (1988), the Court explained: "The exception, properly construed . . . protects only governmental actions and decisions based on consideration of public policy." The reason for "fashioning an exception for discretionary governmental functions" was to "protect the government from liability that would seriously handicap efficient government operations." Varig Airlines, 467 U.S. at 814.

In Berkovitz, the Court adopted a two-stage inquiry: First, a court must consider if "a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow." 486 U.S. at 536. If so, "the employee has no rightful option but to adhere to the directive." Id. Consequently, there can be no lawful discretionary act.

If circumstances imposing compulsion do not exist, a court must then consider whether the challenged action or inaction "is of the kind that the discretionary function exception was designed to shield." Berkovitz, 486 U.S. at 536. Again, the Court emphasized that the "discretionary function exception insulates the Government from liability if the action . . . involves the permissible exercise of policy judgment." Id. at 537.

In United States v. Gaubert, 499 U.S. 315, 325 (1991), the Court explained that for a plaintiff's claim to survive, the challenged actions cannot "be grounded in the policy of the regulatory regime." The Court stressed that the "focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." Id.

Gaubert noted another limitation on the exception, citing the hypothetical situation where an agency employee negligently drives an automobile in the course of his employment. Such action, although within the scope of employment, "cannot be said to be based on the purposes that the regulatory regime seeks to accomplish." 499 U.S. at 325 n.7.

An examination of some of the situations where the discretionary function exception was applied may be helpful in understanding its scope. A federal agency decision to use

5

a spot-checking process in inspecting aircraft was an exercise of policy discretion. Varig Airlines, 467 U.S. at 814-16. The supervision of day-to-day activities of a failing thrift institution was based on the public policy considerations of protecting the federal savings and loan insurance fund and federal oversight of the thrift industry. Gaubert, 499 U.S. at 332. The decision of the Food and Drug Administration to refuse entry to suspected contaminated fruit was a discretionary action. Fisher Bros., 46 F.3d at 285. See also Sea Land Servs. v. United States, 919 F.2d 888 (3d Cir. 1990) (decision to use asbestos in construction of ships was a discretionary decision); General Public Utils. v. United States, 745 F.2d 239 (3d Cir. 1984) (action of Nuclear Regulatory Commission in not reporting safety information was discretionary).[1]

Against the background of this brief survey of the general principles governing the discretionary function exception, we move to the consideration of the circumstances present here.

The plaintiff's complaint focuses on the lack of a stairway, railing, and lighting that made the steep path an unsafe means of access to the trailer in the lower lot. Although the district court referred to the Navy's "decision" not to provide such improvements, it is not clear from that court's opinion whether there had been an actual decision to forego those measures, or whether the "decision" was simply inaction. In a deposition, an employee of Martin-Marietta stated that several years before plaintiff fell, the Navy had been asked on two or three occasions to build a stairway or install a handrail to ease travel down the path, but that these requests had been rejected. The government

---

1. For a post-Gaubert commentary of the Federal Tort Claims Act, see Harold J. Krent, Preserving Discretion Without Sacrificing Deterrence: Federal Governmental Liability in Tort, 38 UCLA L. Rev. 871, 898 (1991) ("The discretionary function exception should insulate all agency actions that, like congressional enactments themselves, reflect national policy"); William P. Kratzke, The Supreme Court's Recent Overhaul of the Discretionary Function Exception to the Federal Tort Claims Act, 7 Admin. L.J. Am. U. 1, 32 (1993) ("The discretionary function exception should immunize government decisions only when cases present policy questions that do not lend themselves to resolution by adjudication").

produced testimony that no records of such requests were found in its files.

The government submitted affidavits of several Navy personnel, pointing out what considerations would be germane in "a decision" to construct a stairway or handrail. The use of the article "a" appears to be deliberate and indicates some uncertainty in the record. We gather that there is thus a disavowal of a "decision in fact," or perhaps merely a lack of knowledge, on whether the Navy actually did decide not to take measures to reduce the hazardous conditions in the pathway.

It would appear that in any event, the action or inaction goes more to the issue of negligence rather than whether the issue of policy discretion is implicated. "The test is not whether the government actually considered each possible alternative in the universe of options, but whether the conduct was of the type associated with the exercise of official discretion." Smith v. Johns Manville Corp., 795 F.2d 301, 308-09 (3d Cir. 1986); see also Fisher Bros., 46 F.3d at 284 (we ask only if the nature of the action taken, or not taken, is susceptible to policy analysis).

A.

The plaintiff's first line of attack is that the discretionary function exception is not really at issue because the Navy was bound to provide a stairway under the terms of the OSHA regulations. Under Berkovitz, regulations that give no options to a government agency take away the exercise of discretion. 486 U.S. at 536. If the OSHA regulations did apply, then the Navy could not rely on the discretionary function exception absent a statutory exemption. The district court held that by their own terms, however, the regulations cited by plaintiff applied to construction sites and not to an established facility like the Underwater Tracking Range. On the record before us, the district court's ruling was not erroneous.

The district court also reviewed the evidence on the Navy's alternative theory that, by contract, Martin-Marietta was the entity responsible for the condition of the path to the trailer. The testimony of the Navy personnel did not

7

support the government's theory of delegation to an independent contractor. Based on that evidence, the district court properly rejected the delegation defense. We therefore proceed to the discretionary decision issue.

B.

In concluding that policy considerations were present in the Navy's action (or inaction), the district court relied on an affidavit submitted by the Navy's technical director for the Atlantic Fleet Weapons Training Facility. The affidavit stated that "[i]n evaluating a decision of whether to install an outdoor staircase and artificial lighting there are military, social and economic considerations involved."

The pertinent factors were described as "a policy of insuring that United States Navy and allied forces can safely train with weapons in a realistic warfare environment." It was also alleged that sophisticated weapon systems could be damaged by construction near cables and conduits forming part of those systems. Social considerations included the safety of personnel using the facility and economic factors included budgetary constraints, procurement regulations, and the anticipated service life of the facility.

The latter two categories in the affidavit are a compendium of considerations that conceivably could go to any decision by the Navy, from contracting for highly complex missiles to patching a hole in the floor of an office building. They are hardly the stuff that implicates the Navy's mission to provide a defense to the Nation or to enforce its diplomatic efforts. Consideration of tenets that sweep so broadly is of little use in the application of the discretionary function exception here.

Certainly there is a distinction between contracting for the delivery of a weapons system costing millions or billions of dollars, and the material and labor costs of a few hundred dollars to construct a set of wooden steps, or even the lesser expenditures of erecting a barricade and directing personnel to use alternate routes. The safety of personnel cited by the Navy actually cuts against its position. Again, the Navy's proffered reasons are of such general application

8

as to provide no assistance in determining whether the discretionary function exception fits the situation here.

The third factor -- that of possible damage to cables that are integral to the monitoring devices in the weapons range -- could be a factor affecting the Navy's mission. The difficulty with the Navy's position is that there is no evidence that cables are under or near the path, and potential damage to them from construction of a stairway is highly speculative. Based on this record, there is no indication that any cables would be endangered by the minor improvements involved here. Moreover, location of the cables would have no relevance at all to placing a barricade and diverting pedestrian traffic to an alternate route. The Navy's contention is undermined further by the apparent use of the path by personnel for many years without hazard to the cables.

In emphasizing matters so remote from the circumstances of this case as to be useless, the affidavit employs the fire power of a sixteen-inch gun to attack an irritating gnat. This case is not about a national security concern, but rather a mundane, administrative, garden-variety, housekeeping problem that is about as far removed from the policies applicable to the Navy's mission as it is possible to get. In the words of the Supreme Court, the "challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." Gaubert, 499 U.S. at 325. It is difficult to conceive of a case more likely to have been within the contemplation of Congress when it abrogated sovereign immunity than the one before us.

The government cites a number of cases that it believes supports its position. We find them quite distinguishable from the matter at hand. In Ayer v. United States, 902 F.2d 1038 (1st Cir. 1990), a civilian visitor was injured allegedly as a result of the Air Force's failure to attach a railing to a floor forming part of a missile launch site. The decision to omit railings was a deliberate choice to provide maximum flexibility in the event of a nuclear attack and, in addition, to maintain consistency of configuration with sites at other locations. Id. at 1043. The difference between that case and the one at hand is obvious.

9

In Baum v. United States, 986 F.2d 716 (4th Cir. 1993), the Court concluded that an agency decision as to the material used in guardrails alongside a highway came within the exception. The Court decided that the choice to replace a major element of a substantial public facility was a discretionary decision of resource allocation. Id. at 722. Notably, the agency's decision affected the construction of the entire highway.

A somewhat similar case is Bowman v. United States, 820 F.2d 1393 (4th Cir. 1987), where the National Park Service decided not to place a guardrail alongside the Blue Ridge Parkway. The Court indicated that the agency's decision involved a balancing of safety, aesthetic, and environmental reasons, as well as available financial resources. Id. at 1395. Although that case somewhat favors the Navy's position here, we do not find it so similar in its factual background as to be a persuasive precedent for us.

In Cope v. Scott, 45 F.3d 445 (D.C. Cir. 1995), another automobile accident case, the plaintiff alleged that the Park Service allowed a road surface to become slippery and failed to post warning signs. The Court concluded that the decision to delay resurfacing of that road, in preference to others in need of repair, was a policy judgment to be made by the agency. Id. at 451. However, the Court decided that the government's failure to post warning signs was not a decision "fraught with public policy considerations" and, hence, was outside the exception. Id. See also Cassens v. St. Louis River Cruise Lines, Inc., 44 F.3d 508 (7th Cir. 1995) (coast guard inspectors use discretion when conducting inspections); Johns-Manville, 795 F.2d at 307-08 (government decision to sell asbestos "as is," without warnings, fell within exception).

The government also relies on Hughes v. United States, 110 F.3d 765 (11th Cir. 1997), where the plaintiff was shot by two assailants in the parking lot of a post office. The Court held that the decision of the postal authorities to limit security measures during hours when the post office was closed fell within the discretionary function exception. That case is easily distinguishable on its facts.

We conclude that the discretionary function exception is not applicable in this case. Our holding on the issue of

jurisdiction, of course, is not intended to intimate any view on the liability of the government on the merits. The judgment of the district court will be reversed and the case will be remanded for further proceedings.

A True Copy:
Teste:

<u>Clerk of the United States Court of Appeals</u>
<u>for the Third Circuit</u>

11