**FERROMIN INTERNATIONAL TRADE CORPORATION, et al.**

v.

**UCAR INTERNATIONAL, INC., et al.**

**BHP New Zealand, Ltd., et al.**

v.

**UCAR International, Inc., et al.**

Nos. Civ.A. 99–693, Civ.A. 99–4772.

United States District Court, E.D. Pennsylvania.

June 13, 2001.

Order Amending Memorandum and Order June 15, 2001.

Bruce K. Cohen, Meredith, Cohen & Greenfogel, P.C., Philadelphia, PA, Bruce Holcomb, Kenneth Adams, Nicole Cober Shumate, James Martin, Dickstein, Shapiro, Morin & Oshinsky, LLP, Washington, DC, for plaintiffs.

Francis P. Newell, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, Kevin R. Sullivan, King & Spalding, Washington, DC, for UCAR Intern., Inc., UCAR Carbon Co., Inc.

Daniel Segal, Hangley, Aronchick, Segal & Pudlin, Philadelphia, PA, Jerome S. Fortinsky, Kathryn Tabner, Shearman & Sterling, New York City, for SGL Carbon A.G.

Daniel Segal, Hangley, Aronchick, Segal & Pudlin, Philadelphia, PA, Matthew A. White, Wolf, Block, Schorr & Solis-Cohen, LLP, Philadelphia, PA, Kenneth R. Davis, Lane, Powell, Spears, Lubersky, Portland, OR, for Tokai Carbon Co., Ltd. and Tokai Carbon U.S.A., Inc.

Joseph A. Tate, George G. Gordon, Dechert, Price & Rhoads, Philadelphia, PA, for The Carbide/Graphite Group, Inc.

Robert A. Nicholas, Reed, Smith, Shaw & McClay, Philadelphia, PA, Daniel Segal, Hangley, Aronchick, Segal & Pudlin, Philadelphia, PA, Kenneth I. Schacter, Richards & O'Neill, LLP, New York City, for Nippon Carbon Co., Ltd.

Daniel Segal, Hangley, Aronchick, Segal & Pudlin, Philadelphia, PA, William H. Roberts, Blank, Rome, Comisky & McCauley, LLP, Philadelphia, PA, Scott Martin, Weil, Gotshal & Manges, LLP, New York City, for SEC Corp.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

The plaintiffs in these cases are all foreign companies who are seeking a remedy under the United States antitrust laws for injuries they claim to have suffered as a result of price fixing and market allocation in the worldwide market for graphite electrodes from July 1, 1992 to December 31, 1997. Most of the plaintiffs claim they were injured by having to pay inflated prices abroad for graphite electrodes. Plaintiffs have brought these actions under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26, to recover treble damages for injuries caused by defendants' alleged violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

In *Ferromin International Trade Corp, et al. v. UCAR International Inc., et al.,* Civil Action No. 99–693, ("Ferromin") the plaintiffs are 26 foreign corporations which have their principal place of business in Thailand, Turkey, Australia, China, Austria or Sweden. The other plaintiff is a domestic company which purchased graphite electrodes on behalf of two of the Turkish plaintiffs.

In *BHP New Zealand, LTD., et al. v. UCAR International, Inc., et al.*, Civil Action No. 99–4772, ("BHP"), the plaintiffs are a New Zealand company and three Australian companies. Defendants in both actions are various American, Japanese and German entities engaged in the world-wide market for the manufacture and sale of graphite electrodes.

In *Ferromin*, the defendants have filed motions to dismiss the Second Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. In *BHP*, the defendants have filed an identical motion. Following oral argument, the court, in an Order dated February 13, 2001, stated that although "it does not appear from the bare allegations in the complaints that plaintiffs can meet [the standards under the Foreign Trade Improvements Act]", we would, "out of an abundance of caution", give plaintiffs sixty days to conduct discovery in support of jurisdiction. Plaintiffs elected not to conduct any discovery during the 60–day period. For the reasons which follow, the motions to dismiss will be granted in part and denied in part.

In deciding a motion to dismiss under Rule 12(b)(1), this court is not confined to the bare allegations of the complaints, but may consider "affidavits, depositions and testimony to resolve factual issue bearing on jurisdiction." *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir.1997).

In the case *sub judice*, plaintiffs have submitted certain tables in which they detail their individual purchases of graphite electrodes. Indeed, by Stipulation dated June 30, 1999, the plaintiffs expressly agreed to provide the information contained in the tables prior to defendants' Rule 12 motions for the purpose of assisting the Court in resolving issues related to jurisdiction. Therefore, we will consider these tables in ruling on the defendants' motions to dismiss for lack of subject matter jurisdiction.

In *Ferromin*, plaintiffs allege that they purchased approximately $229 million worth of graphite electrodes from the defendants during the alleged conspiracy period. *See*, Tables 1 and 2 attached to Plaintiffs' Responses to Defendants' First Set of Interrogatories (Plaintiffs' Tables). The plaintiffs concede, however, that nearly $205 million worth of these alleged purchases had no connection whatsoever to the United States—the electrodes were all manufactured outside of the United States, shipped to plaintiffs' locations outside the United States, invoiced outside the United States and used in steel mills outside the United States. Plaintiffs' Table 2. Indeed, 14 of the 27 plaintiffs concede that none of their purchases had any connection to the United States.[1] *Id.* Two of the plaintiffs, China Metallurgical Import and Export Magang Co. and Jiangsu Shagang Group Co., Ltd., do not even claim to have purchased any graphite electrodes from defendants or anyone else, during the alleged conspiracy period. *Id.* The remaining 11 plaintiffs purchased some electrodes that were manufactured and/or invoiced in the United States, but shipped to the plaintiffs' locations outside the United States and used in steel mills outside the United

1. These plaintiffs are: Ekinciler dis Ticaret A.S.; Asil Celik Sanayi ve Ticaret, A.S.; Colakogulu Metalurji A.S.; Fu Shun Steel Plant Import and Export Company; International Economic and Trading Co. (Wugang Group); Lai Wu Iron and Steel Company; Daye Steel Group Import and Export Co.; Zhangjiagang Novel Steel Co. Ltd.; Zhangjiagang Sheen Faith Steel Co., Ltd; Guangzhou Iron and Steel Co., Ltd.; Guangzhou Iron and Steel Holding Ltd. Corp.; Izmir Demir Celik Sanayi A.S.; Uddeholm Tooling A.B.; and IC-DAS Celik Enerji Tersane ve Ulasim Sanayi A.S.

States.[2] (Plaintiffs' Table 1, nn. 1 & 2).

In *BHP*, the plaintiffs claim to have purchased approximately $ 21.3 million worth of graphite electrodes from sellers located in India, Australia, Japan, Germany and France. See attachment to Plaintiff's Supplemental Response to Defendants' First Set of Interrogatories *Id.* Plaintiffs concede that approximately $20.8 million of their graphite electrode purchases had no connection whatsoever to the United States—the electrodes were all manufactured, shipped, invoiced and used outside the United States. *Id.* Plaintiffs characterize approximately $500,000 of their purchases as "U.S. purchases," but do not, as the plaintiffs do in *Ferromin*, differentiate as to which of these purchases involved electrodes that were manufactured in the United States and those that were invoiced in the United States.

The gravamen of both complaints is that the defendants "entered into and participated in an illegal contract, combination and conspiracy to suppress and eliminate competition in the worldwide market for graphite electrodes by artificially raising, fixing, maintaining or stabilizing prices, allocating the volume of graphite electrodes sold by each, and limiting the transfer of technology related to the manufacturing of graphite electrodes ..." Second Amended Complaint at 69, 72; BHP Complaint at 47, 50.

Section 1 of the Sherman Act states:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal.

15 U.S.C. § 1.

 The Foreign Trade Antitrust Improvement Act ("FTAIA"), enacted by Congress in 1982 to clarify the application of United States antitrust laws to foreign conduct, limits the application of such laws when non-import foreign commerce is involved.[3] Specifically, section 6a of the FTAIA, 15 U.S.C. § 6a, provides, in pertinent part, that the Sherman Act "shall not apply to conduct involving trade or commerce ... with foreign nations unless ... such conduct has a direct, substantial, and reasonably foreseeable effect .... on trade or commerce which is not trade or commerce with foreign nations and such effect gives rise to a claim under the Sherman Act."[4]

---

2. These plaintiffs are: Ferromin International Trade Corporation; Ekinciler Demir Celik Sanayi A.S.; Diler Demir Celik Endustrisi ve Ticaret A.S.; Yazici Demir Celik Sanayi ve Ticaret A.S.; Siam Yamato Steel Company, Ltd; Siam Construction Steel Company, Ltd; Siam Iron and Steel Company, Ltd.; Smorgon Steel Group, Ltd; Shanghai Pudong Iron and Steel (Group) Co, Ltd; Shanghai No. 5 Steel (Group) Co., Ltd. and Bohler Edelstahl GMBH.

3. Although the FTAIA specifically amended the Sherman Act and the Federal Trade Commission Act, its requirements apply to actions brought under Section 4 of the Clayton Act for violations of the Sherman Act. *See, e.g.,* *The 'In' Porters, S.A. v. Hanes Printables, Inc.,* 663 F.Supp. 494, 498 n. 4 (M.D.N.C.1987).

4. In full, the FTAIA provides:

Sections 1 to 7 of this title shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless—

(1) such conduct has a direct, substantial, and reasonably forseeable effect—

(A) on trade or commerce which is not trade or commerce with foreign nations; or

(B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and

(2) such effect gives rise to a claim under the provisions of sections 1 to 7 of this title, other than this section.

If sections 1 to 7 of this title apply to such conduct only because of the operation of paragraph (1)(B), then sections 1 to 7 of

**704**

Defendants argue that under Section 6(a)(2) of the FTAIA, the plaintiffs must show not only that the conduct which caused the injury has a direct, substantial and reasonably foreseeable effect on the United States market place, but also must show that it is the effects of this conduct which gives rise to their claims. Defendants contend that this court has no jurisdiction over plaintiffs' claims because to the extent plaintiffs suffered any injury, such injury arose solely out of the effects of defendants' allegedly anticompetitive conduct in foreign markets and not out of the effects of that conduct on the United States market for graphite electrodes. Plaintiffs contend that jurisdiction exists under the FTAIA whenever there is an injury arising out of alleged anticompetitive conduct, so long as the conduct has a direct, substantial, and reasonably foreseeable effect in the United States, regardless whether the injury arose from the same effects. The overwhelming authority favors the defendants' argument.

The one federal appeals court and many district courts which have addressed the specific meaning of Section 6(a)(2) of the FTAIA and its legislative history have all concluded that it requires foreign plaintiffs asserting a claim under United States antitrust laws to show *both* that the complained-of conduct had a direct, substantial and reasonably foreseeable effect on the United States domestic marketplace, *and that an anticompetitive effect on the United States market place* must give rise to plaintiff's claimed injuries. *See Den Norske Stats Oljeselskap As v. HeereMac Vof,* 241 F.3d 420 (5th Cir.2001) (holding that a foreign plaintiff injured in a foreign marketplace must show that a substantial domestic effect on United State commerce

"gives rise" to its antitrust claim); *Kruman, et al. v. Christie's Int'l PLC, et al.,* 129 F.Supp.2d 620 (S.D.N.Y.2001) (holding that the FTAIA permits jurisdiction "only where the conduct complained of had 'direct, substantial and reasonably foreseeable' effects in the United States *and* the effects giving rise to jurisdiction are the basis for the alleged injury."); *In re Microsoft Corp.,* 127 F.Supp.2d 702 (D.Md. 2001) (holding that, under the FTAIA, "foreign consumers who have not participated in any way in U.S. market have no right to institute a Sherman Act claim."); *In re Copper Antitrust Litigation,* 117 F.Supp.2d 875, 876 (W.D.Wis.2000) (holding that "it is plain from the language of this act and bolstered by the legislative history that a private plaintiff cannot sue under the antitrust laws of the United States for injuries incurred as a result of international transactions that have an anticompetitive effect on a United States market if the domestic anticompetitive effect is not the same one that gives rise to plaintiff's injury."); *S. Megga Telecomm. Ltd. v. Lucent Technologies, Inc.,* 1997 WL 86413 (D.Del. Feb.14, 1997) (anticompetitive domestic effect of higher prices for United States consumers did not "give rise" to plaintiff's claim for lost sales to defendant); *The 'In' Porters, supra* (anticompetitive domestic effect (lost exporters of United States exporters) did not "give rise" to plaintiff's claims for lost sales in France due to marketing agreement with defendant); *de Atucha v. Commodity Exch., Inc.,* 608 F.Supp. 510 (S.D.N.Y. 1985) (conspiracy's effect on silver prices on United States exchange did not "give rise" to plaintiff's injury on London exchange).

this title shall apply to such conduct only for injury to export business in the United States.

15 U.S.C. § 6a.

Plaintiffs direct our attention to a number of cases, including one from our Court of Appeals, in which the courts concluded they had subject matter jurisdiction over the claims of foreign plaintiffs. None of these cases, however, involved an interpretation, as in the case *sub judice,* of Section 6(a)(2) of the FTAIA. Moreover, even if these cases were relevant, it was in fact the substantial effect on United States commerce which gave rise to plaintiff's injury and claim under the antitrust laws that enabled the court to exercise subject matter jurisdiction. *See, e.g., Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.,* 227 F.3d 62 (3d Cir.2000) (anticompetitive effect on domestic rug market 'gives rise' to plaintiff's injury); *United States v. Nippon Paper Industries Co., Ltd.,* 109 F.3d 1 (1st Cir.1997) (collusion amongst fax paper producers resulted in higher prices for fax paper in the United States, which "gives rise" to the United States' claim); *Carribean Broad. Sys., Ltd. v. Cable and Wireless PLC,* 148 F.3d 1080 (D.C.Cir.1998) (monopolization of United States market for advertising in the Carribean "gives rise" to plaintiff's claim of being blocked from that market); *see also, Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993) (conspiracy's effect on the United States insurance market "gives rise" to the plaintiff's injury, the inability to obtain certain types of coverage in that market.).

■ Based on the plain language of the FTAIA and the above-authority, we find that the FTAIA permits jurisdiction over antitrust claims of foreign plaintiffs who were injured in foreign marketplaces only where the complained-of conduct had a direct, substantial and reasonably foreseeable effect on the domestic marketplace *and* that this anticompetitive effect on the domestic marketplace gave rise to their injuries.

■ In the cases *sub judice,* we note that the plaintiffs in *Ferromin,* allege a number of anticompetitive effects that the defendants' conduct had on the United States marketplace: (1) artificial inflation of graphite electrode prices, Second Amended Complaint at 44(a), (e); (2) artificial limits on the volume of imported graphite electrodes, *Id.* at 44(c); (3) an artificial increase in the price of imported steel, *Id.* at 44(d); (4) an artificial reduction in the price of scrap, *Id.* at 44(f); and (5) artificial limits on the volume of graphite electrodes exported from the United States, *Id.* at 44(b). See also *BHP* Complaint at 22(a)–(g). We find that these allegations are sufficient to satisfy the first requirement of the FTAIA.

However, the majority of the plaintiffs do not allege that it was any of these domestic effects on the United States domestic market which gives rise to their claim. As noted above, under the plain language of Section 2 of the FTAIA, plaintiffs' injuries must stem from the effect of higher prices for graphite electrodes in the United States.

Here, plaintiffs own tables reveal that 14 of the 29 plaintiffs used graphite electrodes that were neither purchased nor manufactured in the United States. Two did not even purchase any graphite electrodes from any source in the relevant time period. Thus, 16 plaintiffs did not even purchase graphite electrodes in the United States domestic marketplace. Therefore, they could not have been injured by anticompetitive prices in the United States marketplace. Put simply, these 16 plaintiffs have not shown that higher prices that American companies paid for graphite electrodes in the United States gives rise to their claims that they paid higher prices for graphite electrodes in foreign markets. With regard to these 16 plaintiffs, any injuries they suffered

were caused by anticompetitive effects in foreign countries and not in the United States.

■ The remaining 11 plaintiffs in *Ferromin* do allege, however, that some of the graphite electrodes they purchased were manufactured in, and/or invoiced from, the United States. While the mere fact that goods were manufactured in the United States is insufficient to establish jurisdiction under the FTAIA. *See, e.g., Den Norske* 241 F.3d at 429, n. 28, we find that the fact some of the electrodes these 11 plaintiffs purchased were invoiced in the United States satisfies the causal requirement that these 11 plaintiffs were injured as the result of higher prices for graphite electrodes in the United States market. After all, if the graphite electrodes these 11 plaintiffs purchased were invoiced in the United States, it necessarily follows that the prices for these electrodes were also set in the United States. Therefore, the claims of these 11 plaintiffs in *Ferromin* which involve a total of $18,008,262.57 may proceed at this stage of the proceedings.

In *BHP*, two of the plaintiffs, NSW BHP Steel PTY LTD and BHP Steel (JLA) PTY LTD, contend that they made United States purchases of graphite electrodes. However, these plaintiffs do not specify whether these electrodes were manufactured or invoiced in the United States. Plaintiff may file a supplemental table documenting whether these two plaintiffs purchased any graphite electrodes that were invoiced in the United States.

Plaintiffs argue that the fact that they have alleged a "worldwide" or "global" conspiracy, to fix prices in a "worldwide" market including the United States allows this court to exercise jurisdiction over all 29 plaintiffs' claims, including those of the 16 plaintiffs who purchased electrodes that

were manufactured, delivered and consumed solely in overseas markets. However, section 6(a)(2) specifically requires that plaintiffs must be able to show that it was an anticompetitive effect on specifically the *United States market* for graphite electrodes which caused plaintiffs' alleged injuries. As stated by the Court of Appeals for the Fifth Circuit in *Den Norske*, "[r]egardless of the nature of the conspiracy, [plaintiff] must allege an injury that falls within the scope of the antitrust statutes. The assumed existence of a single, unified, global conspiracy does not relieve [plaintiff] of its burden of alleging that its injury arose from the conspiracy's proscribed effects on United States commerce." *Den Norske*, at 427, n. 24. Here, plaintiffs have failed to show that their injuries arose from the alleged conspiracy's proscribed effects on United States commerce. Nor did plaintiffs elect to pursue discovery on this issue when given the opportunity to do so by the Court.

The result we reach does not, as plaintiffs contend, serve to preclude plaintiffs located abroad from the United States antitrust laws. Rather, the FTAIA allows an injured party who is located overseas to sue under the United States antitrust laws to redress injuries as long as the injuries arose form the effects of the illegal conduct on the United States marketplace. Indeed, it was the intent of Congress in promulgating the FTAIA that "[f]oreign purchasers should enjoy the protection of our antitrust laws *in the domestic marketplace,* just as our citizens do." H.R.Rep. No. 97–686, at 10–11. Here, it is the inability of the vast majority of the plaintiffs to show that their injuries resulted from an anticompetitive effect on the United States market for graphite electrodes which is fatal to their claims. Indeed, if we were to exercise subject matter jurisdiction despite plaintiffs' failure to show

the requisite causal connection, we would in effect be extending the Sherman Act to cover claims for damages suffered by foreign companies solely because of decreased competition and higher prices in foreign markets, thereby inviting foreign customers, lured by the prospect of treble damages, to flood the United States courts. We do not think this is the result Congress intended in enacting the FTAIA.

### ORDER

AND NOW, this 13th day of June 2001, upon consideration of defendants' motions to dismiss the Second Amended Complaint in the *Ferromin* action, and the motion of the defendants to dismiss the Complaint in the *BHP* action, plaintiffs' responses thereto, and defendants' replies, it is hereby ORDERED:

1. that the said motions are GRANTED IN PART AND DENIED IN PART;

2. that the claims of the following 16 plaintiffs in the *Ferromin* action: China Metallurgical Import and Exchange Magang Co.; Jiangsu Shagang Group Co., Ltd.; Ekinciler dis Ticaret A.S.; Asil Celik Sanayi ve Ticaret, A.S.; Colakogulu Metalurji A.S.; Fu Shun Steel Plant Import and Export Company; International Economic and Trading Co. (Wugang Group); Lai Wu Iron and Steel Company; Daye Steel Group Import and Export Co.; Zhangjiagang Novel Steel Co. Ltd.; Zhangjiagang Sheen Faith Steel Co., Ltd.; Guangzhou Iron and Steel Co., Ltd.; Guangzhou Iron and Steel Holding Ltd. Corp.; Izmir Demir Celik Sanayi A.S.; Uddeholm Tooling A.B.; and ICDAS Celik Enerji Tersane ve Ulasim Sanayi A.S. are DISMISSED with prejudice as to all defendants; and

3. that the claims of the following 11 plaintiffs in the *Ferromin* action: Ferromin International Trade Corporation; Ekinciler Demir Celik Sanayi A.S.; Diler Demir Celik Endustrisi ve Ticaret A.S.; Yazici Demir Celik Sanayi ve Ticaret A.S.; Siam Yamato Steel Company, Ltd.; Siam Construction Steel Company, Ltd.; Siam Iron and Steel Company, Ltd.; Smorgon Steel Group, Ltd; Shanghai Pudong Iron and Steel (Group) Co., Ltd.; Shanghai No. 5 Steel (Group) Co., Ltd. and Bohler Edelstahl GMBH shall remain only as to United States Purchases of Graphite Electrodes Invoiced in the United States in the total amount of $18,008,262.57.

4. that the claims of plaintiffs The Broken Hill Proprietary Company Limited and BHP New Zealand Steel Ltd. in the *BHP* action are DISMISSED with prejudice as to all defendants.

5. that the claims of plaintiffs NSW BHP Steel Pty. Ltd. and BHP Steel (JLA) PTY. LTD. in the *BHP* action shall remain as to such time as these plaintiffs can show that they purchased graphite electrodes that were invoiced in the United States.