TURICENTRO, S.A., Centro America Travel Agencie, Ltd., Negocios Globo, S.A., and Fronteras Del Aire, S.A., On behalf of themselves and all those similarly situated

v.

AMERICAN AIRLINES, INC., Continental Airlines, Inc., Delta Airlines, Inc., International Air Transport Association (IATA), and United Airlines, Inc.

No. CIV. A. 01–CV–468.

United States District Court, E.D. Pennsylvania.

July 24, 2001.

Joseph C. Kohn, Robert J. LaRocca, William E. Hoese, Kohn, Swift & Graf, P.C., Philadelphia, PA, for plaintiffs.

Francis Patrick Newell, Peter Breslauer, Montgomery, McCracken, Walker & Rhoads, LLP, Philadelphia, PA, for defendants.

### *MEMORANDUM AND ORDER*

JOYNER, District Judge.

This antitrust class action suit has been brought before the Court on motion of the defendants to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P.Nos. 12(b)(1) and 12(b)(6). For the reasons set forth below,

the motion to dismiss for lack of subject matter jurisdiction shall be granted.

### History of the Case

This action arises out of the decision of the International Air Transport Association ("IATA")[1] at the July 19–23, 1999 meeting of its Passenger Tariff Coordinating Conference in Montreal, Canada to lower the commission paid to IATA-accredited travel agents in Central America and Panama to a flat rate of 7%. Prior to this time, the commission rates paid to travel agents in Latin America and the Carribean varied, depending upon the country. In the case of Peru, Panama, Bolivia and Nicaragua, the commission rate was as high as 10–11%.

Plaintiffs aver that, despite the reflection in the meeting's minutes that the "U.S.-based TC [Tariff Commission] Members were prohibited by their authorities from participating in such discussions [concerning the proposal to lower the commission rates in Latin America and the Carribean] and ...were therefore not present for this part of the Agenda," the four defendant airlines were, in fact, "...aware of and endorsed and encouraged IATA to adopt and implement this change in commission structure" and "assisted in planning this agenda, were aware this vote would be taken, and endorsed the Tariff Conference's lowering the commission rates." (Complaint, ¶s 37, 38, 40). Plaintiffs allege that the defendants thus acted in concert to lower the commission rates, in violation of United States antitrust laws with devastating effects upon plaintiffs' businesses and the businesses of the members of the proposed class[2] whom they seek to represent. (Complaint, ¶s 47–49).

Defendants now move to dismiss the plaintiffs' complaint in its entirety on the grounds that Plaintiffs lack antitrust standing and this court lacks subject matter jurisdiction as the American antitrust laws do not regulate competitive conditions in foreign countries. In addition to these arguments, Defendant IATA further seeks dismissal of the complaint against it because (1) all of the alleged conduct of IATA and the conference members was expressly approved and granted antitrust immunity under Sections 413 and 414 of the Federal Aviation Act, 49 U.S.C. § 41308–41309; and (2) it lacks the requisite "minimum contacts" with this forum such as would justify this Court's exercise of personal jurisdiction over it. Because we find that we do not have subject matter jurisdiction to hear this matter, we do not address the defendants' alternative arguments.

### Standards Governing Rule 12(b)(1) and 12(b)(6) Motions

When defendants move to dismiss a complaint under Rule 12(b)(1) for failure to

---

1. According to the complaint, Latin American and Carribean travel agents must be licensed or accredited by IATA in order to make international reservations; without such registration, a Latin American/Caribbean agent cannot receive the identification number needed to enter the reservation system to make airline passenger reservations on any of the four defendant air carriers. (Complaint, ¶ 31). Moreover, reservations on American, Continental, Delta and United Airlines account for a substantial, if not the predominant, portion of the business done by travel agents in Latin America and the Caribbean. (Complaint, ¶ 32). The named plaintiffs here are four travel agencies located in San Jose, Costa Rica and Managua, Nicaragua; IATA is a trade association of airlines of which American, Continental, Delta and United are members.

2. The proposed class consists of "all IATA-accredited travel agents in Latin America and the Caribbean, excluding any travel agencies owned in whole or in part by defendants to this litigation, or their affiliates or subsidiaries." (Complaint, ¶ 18).

allege subject matter jurisdiction, the allegations of the complaint must be treated as true and the plaintiff afforded the favorable inferences to be drawn from the complaint. *N.E. Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3rd Cir.2001), citing *Mortensen v. First Federal Savings & Loan Ass'n.*, 549 F.2d 884, 891 (3rd Cir.1977); Fed.R.Civ.P. 8(f). A challenge to a complaint for failure to allege subject matter jurisdiction is known as a "facial" challenge, and must not be confused with a "factual" challenge contending that the court in fact lacks subject matter jurisdiction, no matter what the complaint alleges, as factual challenges are subject to different standards. *Id.*, at 341, n. 7. *See Also:* 5A Wright & Miller, *Federal Practice & Procedure Civil 2d* § 1350, at 212–18 (1990). Thus, a Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. *Gould Electronics, Inc. v. United States*, 220 F.3d 169, 176 (3rd Cir.2000). In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff. *Id.*, citing *PBGC v. White*, 998 F.2d 1192, 1196 (3rd Cir.1993). In reviewing a factual attack, the court may consider evidence outside the pleadings. *Id.*, citing *Gotha v. United States*, 115 F.3d 176, 178–79 (3rd Cir.1997). In any event, on a motion to dismiss for lack of subject matter jurisdiction it is the plaintiff who has the burden of persuading the court that it has jurisdiction. *Gould*, 220 F.3d at 178.

In contrast, a motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief. *In re Burlington Coat Factory Securities Litigation;* 114 F.3d 1410, 1420 (3d Cir.1997); *Bartho-*

*lomew v. Fischl*, 782 F.2d 1148, 1152 (3d Cir.1986). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### Discussion

As noted, Defendants first seek to have the plaintiffs' complaint dismissed because it fails to allege any anticompetitive effect on United States domestic commerce thus depriving this Court of subject matter jurisdiction. In light of the current state of the record, Defendants thus appear to be raising a facial challenge to subject matter jurisdiction as well as to the plaintiffs' statement of a claim upon which relief can be granted.

Plaintiffs' complaint seeks monetary damages and an adjudication that by conspiring and enacting the agreement to lower their commission rates, the defendants' conduct violated the Sherman Act, 15 U.S.C. § 1. Under that Act,

> Every contract, combination in the form of trust or otherwise, or conspiracy or restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and on conviction thereof, shall be punished by fine not exceeding $10,000,000 if a corporation, or if any other person, $350,000, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

Generally speaking, American antitrust laws do not regulate the competitive conditions of other nations' economies. *Matsu-*

*shita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 582, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *United States v. Aluminum Co. of America*, 148 F.2d 416, 443 (2nd Cir.1945). The Sherman Act does reach conduct outside our borders, but only when the conduct has an effect on American commerce. *Matsushita*, 475 U.S. at 582, 106 S.Ct. 1348, citing *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 704, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962).

In 1982, Congress enacted the Foreign Trade Antitrust Improvement Act (FTAIA), 15 U.S.C. § 6a, for the purpose of facilitating the export of domestic goods by exempting export transactions that did not injure the United States economy from the Sherman Act and thereby relieving exporters from a competitive disadvantage in foreign trade. *Carpet Group International v. Oriental Rug Importers*, 227 F.3d 62, 71 (3rd Cir.2000). The Act thus clarifies the application of United States antitrust laws to foreign conduct and specifically limits the application of such antitrust laws when non-import foreign commerce is involved. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 421 (5th Cir.2001). Specifically, the FTAIA dictates:

Sections 1 to 7 of this title shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless-

(1) such conduct has a direct, substantial, and reasonably foreseeable effect-

(A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or

(B) on export trade or export commerce with foreign nations, of a person engaged in such trade or

commerce in the United States; and

(2) such effect gives rise to a claim under the provisions of sections 1 to 7 of this title, other than this section.

If sections 1 to 7 of this title apply to such conduct only because of the operation of paragraph (1)(B), then sections 1 to 7 of this title shall apply to such conduct only for injury to export business in the United States.

■ Under section 7, then, the Sherman Act does not apply to domestic or foreign conduct affecting foreign markets, consumers, or producers unless there is a direct, substantial, and reasonably foreseeable effect on the domestic market or on opportunities to export from the United States. *Bloch v. SmithKline Beckman Corp.*, 1988 WL 117927, 1988 U.S. Dist. LEXIS 12397 (E.D.Pa.1988), citing P. Areeda & H. Hoven Kamp, 1987 Supplement to Antitrust Law, 192–93 (1987). *See Also, O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana, S.A.*, 830 F.2d 449, 455 (2nd Cir.1987); *Akzona, Inc. v. E.I. DuPont De Nemours & Co.*, 607 F.Supp. 227, 234–35 (D.C.Del.1984); *Eurim–Pharm GmbH v. Pfizer, Inc.*, 593 F.Supp. 1102, 1105–06 (S.D.N.Y.1984).

This section is consistent with the long-held interpretation of the Sherman Act as having been intended to reach conduct abroad only if the conduct was intended to have, or had, significant effects within the United States. *Kruman v. Christie's International PLC*, 129 F.Supp.2d 620, 624 (S.D.N.Y.2001), citing, *inter alia, Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 796, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993), *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., supra.,  McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 814 (9th Cir.1988).

■ Thus, anti-trust conduct involving United States export commerce with foreign nations is actionable only if that conduct has a "direct, substantial, and reasonably foreseeable effect" on one of the following: (1) on United States domestic commerce; (2) on United States import commerce; or (3) on export commerce only to the extent that such conduct injures export business in the United States. *Optimum, S.A. v. Legent Corporation*, 926 F.Supp. 530, 532 (W.D.Pa. 1996). This is because the FTAIA was intended to exempt from the Sherman Act export transactions that did not injure the United States economy. *Hartford Fire Insurance Co. v. California*, 509 U.S. 764, 796, n. 23, 113 S.Ct. 2891, 2909 n. 23, 125 L.Ed.2d 612 (1993), citing, H.R.Rep. No. 97–686, pp. 2–3, 9–10 (1982). Stated otherwise, the Export Act establishes three requirements that an antitrust plaintiff, other than a domestic importer, must prove to establish subject matter jurisdiction: (1) the defendant's conduct must have a direct, substantial and reasonably foreseeable effect on (2) *plaintiff's* continuing ability to export products (3) *from the United States. The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F.Supp. 494, (M.D.N.C.1987). A foreign company that demonstrates the requisite effect on the United States export trade, but fails to establish that it is within the class of injured United States exporters, lacks a jurisdictional basis to sue under the Sherman Act. *Id.*, citing *Pfizer*, 593 F.Supp. at 1106, n. 5. It therefore appears that it is not the situs of the defendant's conduct which is controlling, but rather where the effects of that conduct is felt. *See, e.g., Kruman*, 129 F.Supp.2d at 625; *In re Copper Antitrust Litigation*, 117 F.Supp.2d 875, 879, (W.D.Wis.2000). In this way, the plain language of the FTAIA precludes subject matter jurisdiction over claims by foreign plaintiffs against defendants where the situs of the injury is overseas and that injury arises from effects in a non-domestic market. *Den Norske Stats*, 241 F.3d at 428. Unless the requirements under section 7 are met, this court lacks subject matter jurisdiction. *Liamuiga Tours v. Travel Impressions, Ltd.*, 617 F.Supp. 920, 925 (E.D.N.Y.1985); *Akzona*, 607 F.Supp. at 234; *Eurim–Pharm*, 593 F.Supp. at 1107.

■ In this case, although the plaintiffs' complaint avers that the defendants' concerted actions have had a devastating effect upon them and the members of the proposed class in that a number of them have gone out of business or are on the verge of going out of business, nowhere in their complaint do they aver that these effects have been felt on American soil. (Complaint, ¶s 47, 49–52). Accepting these allegations as true for purposes of deciding this motion, Plaintiffs complain that it is the defendants' *conduct* which has taken place here and that the *effect* has been felt on their businesses in Latin America and in the Caribbean. To be sure, the complaint asserts only:

## VII. TRADE AND COMMERCE

53. Defendants' and their co-conspirators' activities, as described herein, occurred within and affected interstate commerce within the United States.

54. The conduct challenged in this complaint has taken place within United States commerce for the following reasons, inter alia:

A. The defendants combined and conspired within the United States to reduce the travel agents' commissions to 6%;

B. When a Latin American or Caribbean travel agent makes a reservation for a United States air line carrier (i.e. American, Continental, Delta or

United), that reservation is made in the United States, through a central computer bank which links to each carrier's computer reservation system located in the United States. The reservation is actually booked, and effected, in the United States and therefore in United States commerce;

C. The agent's commission is established at the time and place the reservation is effected in the computer system in the United States. American, Continental, Delta, and United compute the commission due to class members in the United States, debit this amount in the United States and draft and remit the commission payments in the United States. Hence, defendants' conspiracy to reduce agents' commissions to 6% occurred wholly or substantially within United States commerce.

D. Under the IATA standard form contract with its travel agents, all money belongs to the carrier from the moment the money is paid by any customer. In other words, when customers of plaintiffs and the plaintiff class pay IATA travel agents for tickets in Costa Rica, Nicaragua, or elsewhere in Latin America or the Caribbean, the IATA contract provides that all money the travel agent receives is immediately deemed to belong to the respective carriers, in this case American, Continental, Delta and United. This includes all commission amounts....

E. The IATA standard agreement provides at ¶ 18 that "This Agreement shall in all respects be interpreted in accordance with the laws of the principal place of business of the Carrier."

55. Thus, when a class member herein makes an airline reservation on American, Continental, Delta or United, the reservation is made in the United States through computers located in the United States; the 6% commission is fixed in the United States at the time the reservation is made; all money paid by the travel agent's customer, including all money for agent's commissions, immediately become the property of American, Continental, Delta and United in the United States; and the commission is computed in and remitted from the United States.

Again, the plaintiffs themselves are in Costa Rica and Nicaragua and the class which they seek to represent consists of "[a]ll IATA-accredited travel agents *in* Latin America and the Caribbean." (Complaint, ¶ s 6–9, 18). Thus, assuming as true that the alleged conspiracy and the actions taken in furtherance thereof did occur within United States commerce, the plaintiffs aver nothing from which this Court could find that Defendants' purported conspiracy caused any injury which was felt in the U.S. or which affected the American economy in any way.

### *Conclusion*

While it may be true that the antitrust conspiracy alleged here has significantly injured the plaintiffs' businesses in the Caribbean and Latin America, American antitrust laws do not regulate the competitive conditions of other nations' economies. Accordingly, the plaintiffs must look to the laws of the Caribbean and Latin American for redress in this case and we therefore find that this Court lacks the requisite subject matter jurisdiction to hear this matter. The defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) shall therefore be granted.