**Richard HODGES; and Custom Tours, Inc., Plaintiffs–Appellants,**

v.

**WSM, INC.; Grand Ole Opry Tours, Inc.; and Opryland USA, Inc., Defendants–Appellees.**

No. 93–5090.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 7, 1993.

Decided June 9, 1994.

---

Richard J. Braun (argued and briefed), Richard J. Braun & Associates, Nashville, TN, for plaintiffs-appellants.

R. Dale Grimes (argued), Bennett L. Ross (briefed), Bass, Berry & Sims, Nashville, TN, for defendants-appellees.

Before: BOGGS and NORRIS, Circuit Judges; and BELL, District Judge.*

ALAN E. NORRIS, Circuit Judge.

◼ This is an appeal from the district court's dismissal of an antitrust action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiffs brought suit for damages and injunctive relief under §§ 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, for defendants' alleged violation of § 1 of the Sherman Act, 15 U.S.C. § 1.[1] Since the district court rendered judgment at the pleading stage, we must accept as true the facts alleged in the complaint and determine whether plaintiffs undoubtedly can prove no set of facts in support of their claims that would entitle them to relief. *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir.), *cert. denied*, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990).

## I.

Plaintiffs Richard Hodges and Custom Tours, Inc., operated an airport shuttle service and a sightseeing tour service in Nashville, Tennessee, from December 1986 until 1990. In this action, plaintiffs allege that defendants engaged in an unlawful conspiracy that amounted to an unreasonable restraint of trade and commerce in violation of § 1 of the Sherman Act. Defendants WSM, Inc., Grand Ole Opry Tours, Inc., and Opryland USA, Inc., conduct a variety of related businesses in the Nashville area. WSM, Inc., owns the "Grand Ole Opry," a unique country and western music radio show broadcast live in Nashville on WSM's radio station. WSM also owns defendant Grand Ole Opry Tours, Inc., which conducts sightseeing and other tours in Nashville. In addition, WSM operates Opryland USA, Inc., which owns an amusement park, convention center, and hotel in Nashville, and conducts an airport shuttle service between the airport and its hotel and convention center.

Essentially, plaintiffs allege that defendants orchestrated a market division conspiracy, in violation of § 1 of the Sherman Act, when they entered into an agreement with other shuttle service companies that obliged these companies to refrain from transporting passengers between the airport and the Opryland complex, in exchange for defendants hiring vans and buses from these former competitors for Opryland's sightseeing tour business. In addition, defendants allegedly policed the agreement by refusing entry onto Opryland property to all remaining shuttle service companies, including plaintiffs'. According to plaintiffs, the conspiracy deprived them of sales of shuttle services between the airport and Opryland's property, and the opportunity to compete in the airport shuttle transportation market.

In granting defendants' motion to dismiss, the district court relied upon this court's decision in *Axis, S.p.A. v. Micafil, Inc.*, 870 F.2d 1105 (6th Cir.), *cert. denied*, 493 U.S.

---

\* The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

1. Section 1 of the Sherman Act, 15 U.S.C. § 1, provides in part:
   "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

According to § 4 of the Clayton Act, 15 U.S.C. § 15, "any person who shall be injured ... by reason of anything forbidden in the antitrust laws may sue."

Under § 16 of the Clayton Act, 15 U.S.C. § 26, "[a]ny person ... shall be entitled to sue for ... injunctive relief ... against threatened loss ... by a violation of the antitrust laws."

823, 110 S.Ct. 83, 107 L.Ed.2d 49 (1989). In *Axis,* a European manufacturer of armature winding machines, a type of machine that was manufactured and sold in America by only four firms, brought suit challenging a European competitor's acquisition of two of the American firms, alleging that the acquisitions barred it from the United States market by reducing competition. Two of the American firms held patents on the equipment and they refused both before and after the acquisitions to grant a license to plaintiff to manufacture the equipment in the United States. In dismissing the complaint, we assumed that the acquisitions violated the antitrust laws, but held that plaintiff had not suffered an antitrust injury because its exclusion from the United States market was not caused by the acquisition, but was instead the result of the enforcement of the patents and the refusal by those who controlled them to license Axis.

Based upon the reasoning of our opinion in *Axis,* the district court concluded that plaintiffs' complaint failed to state a claim because it did not allege an antitrust injury. According to the district court:

> [I]n *Axis,* the court found that a close reading of the complaint showed that the injury flowed from the lawful patents blocking entry into the U.S. market. Plaintiff's injury, in this case, was caused by the lawful refusal of Opryland to permit the Plaintiff to enter its property, not by Plaintiff's participation in an alleged illegal market division conspiracy....
>
> ....
>
> ... Plaintiff's injury did not flow from any decrease in competition among the allegedly conspiring shuttle operators, rather it flowed from the Defendants' act of refusing to allow the Plaintiff on their private property. The alleged conspiracy did not prevent Plaintiff from operating a shuttle service from the airport to Opryland. In fact, if the conspiracy existed, it would have benefited Plaintiff by reducing its competition to shuttle passengers from the airport to Opryland. It was Opryland's refusal to allow Plaintiff's vans on its property which caused Plaintiff's injury. If Plaintiff would have suffered the same in-

jury without regard to the allegedly anticompetitive acts of Defendants, Plaintiff has not suffered an antitrust injury. Plaintiff's injury is not causally connected to an antitrust violation because the act of barring the Plaintiff from the Opryland premises does not violate the federal antitrust laws

> ....

## II.

We agree with the district court's analysis.

■ Under the statutory scheme set out in § 1 of the Sherman Act and §§ 4 and 16 of the Clayton Act, a person who is injured by a combination or conspiracy in restraint of trade or commerce has a private cause of action for damages or injunctive relief. If we assume that the market division conspiracy alleged by plaintiffs amounted to a violation of § 1, the relevant question is whether plaintiffs were "injured" by that violation. Because evolving case law instructs us that the Clayton Act contemplates "antitrust injury," plaintiffs were required to allege antitrust injury in order to survive defendants' motion to dismiss. The requirement of showing antitrust injury was first explained by the Supreme Court in *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). There, the Court held that plaintiffs seeking to recover damages in a private action against a violator of antitrust laws must demonstrate more than that they are in a worse position than they would have been had the violator not committed the antitrust conduct. *Id.* at 486, 97 S.Ct. at 696.

> [T]hey must prove more than injury causally linked to an illegal presence in the market. Plaintiffs must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation. It should, in short, be "the type of loss that the claimed violations ... would be likely to cause."

*Id.* at 489, 97 S.Ct. at 697 (citation omitted).[2]

In *Axis*, this court had occasion to apply *Brunswick* in a context similar to the one at hand. There, the plaintiff contended that illegal acquisitions by a competitor precluded its entry into the market. However, what actually barred the plaintiff's entry was the refusal of the defendant and other competitors who held patents to license the plaintiff's use of the patents. The holders of the patents, of course, were within their rights to deny use of the patents to a potential competitor, even though the result of their conduct was to exclude the competitor from the market. Accordingly, any injuries suffered by the *Axis* plaintiff did not result from the illegal acquisitions—the presumably anticompetitive act—but from the refusal of the holders of the patents to grant licenses, and would have occurred in the absence of the antitrust conduct.

■ The district court applied correctly the *Axis* reasoning to dismiss the complaint. Here, defendants were accused of orchestrating with former competitors a combination designed to free defendants of competition. This violation of the antitrust laws, a market division conspiracy to restrain competition, was not the cause of plaintiffs' exclusion from the shuttle service market between the airport and Opryland. In *Axis*, the plaintiff was injured by the lawful refusal of the defendant and others to share their patents; here, plaintiffs' injury resulted from defendants' lawful refusal to grant plaintiffs access to their private property. Accordingly, plaintiffs were not harmed by the kind of evil contemplated by § 1 of the Sherman Act. Their injury was not an "antitrust injury" because it did not result from any decrease in competition among shuttle operators.

Because plaintiffs did not allege, nor could they, that the illegal antitrust conduct was a necessary predicate to their injury or that defendants could exclude plaintiffs only by engaging in the antitrust violation, it was appropriate to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6).

**III.**

The judgment of the district court is **affirmed.**

**2.** In *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 113, 107 S.Ct. 484, 491, 93 L.Ed.2d 427 (1986), the Supreme Court held that a plaintiff seeking injunctive relief under § 16 of the Clayton Act also must allege a threat of antitrust injury.