**GENERAL ELECTRIC COMPANY, et al., Plaintiffs,**

v.

**LATIN AMERICAN IMPORTS, S.A., d/b/a LATAM, et al., Defendants**

No. CIV.A.99–92.

United States District Court,
W.D. Kentucky,
Louisville Division.

June 26, 2002.

---

Victor B. Maddox, Richard V. Evans, Tachau, Maddox, Hovious & Dickens,

Louisville, KY, Hal Nance Bogard, Louisville, KY, for General Elec. Co.

Victor B. Maddox, Richard V. Evans, Tachau, Maddox, Hovious & Dickens, Louisville, KY, Hal Nance Bogard, Louisville, KY, Edward Maurice Mullins, Astigarraga & Davis, Miami, FL, for GE Informations Services, Inc.

Victor B. Maddox, Richard V. Evans, Tachau, Maddox, Hovious & Dickens, Louisville, KY, Hal Nance Bogard, Louisville, KY, Jose Guillermo Sepulveda, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, Miami, FL, Jose I. Astigarraga, Edward Maurice Mullins, Astigarraga & Davis, Miami, FL, for Mabe, S.A.

Marc S. Murphy, Margaret Appenfelder, Stites & Harbison, Louisville, KY, Francisco Ramon Rodriguez, Miami, FL, Paulino A. Nunez, Rodriguez, Tramont, Guerra & Nunez, Miami, FL, for Latin America, Guillermo Gonzales Neumann, Latin America Imports SA.

Francisco Ramon Rodriguez, Miami, FL, Paulino A. Nunez, Rodriguez, Tramont, Guerra & Nunez, Miami, FL, for Perusphere, S.A.

### MEMORANDUM OPINION AND ORDER

COFFMAN, District Judge.

This matter is before the court upon GE's motion (Record No. 139) for summary judgment on LATAM's antitrust claims and the parties' *Daubert* motions regarding LATAM's antitrust expert (Record No. 118), Lawrence G. Goldberg, and GE's antitrust expert (Record No. 135), Barry Harris. The court, having reviewed the record and being otherwise sufficiently advised, will grant GE's motion as to LATAM's antitrust claims (Counts 6 and 7 of the Second Amended Counterclaim), deny the parties' respective *Daubert* motions as moot, and cancel the *Daubert* hearings with regard to the experts Goldberg and Harris.

Fed.R.Civ.P. 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The plain language of this rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Betkerur, M.D. v. Aultman Hospital Assoc.*, 78 F.3d 1079, 1087 (6th Cir. 1996).

LATAM's antitrust claims stem from its theory of this case: that GE embarked on a scheme whereby it induced LATAM to serve as its distributor in Peru and develop a market for GE appliances, then refused to renew LATAM's distributorship contract and set about to destroy LATAM, with the effect that LATAM, an important trade "bridge" by virtue of its success in developing the Peruvian market for sale of U.S. appliances, could not ally itself with competing U.S. manufacturers of appliances, allowing GE to stifle competition and monopolize the market. In Count 6 of its counterclaims, LATAM charges GE with an attempt to monopolize in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. Specifically, LATAM alleges that it was involved in "export trade" to Peru in the geographic market of the United States, in the relevant product market of U.S.-branded household appliances. LATAM further alleges that GE had a market share in excess of 70% in these relevant markets, which gave it a dangerous

probability of success in achieving an outright monopoly. Count 7 of the counterclaims charges GE with conspiracy to restrain trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

Seeking summary judgment on these antitrust counterclaims, GE makes three major arguments: (1) that this court lacks jurisdiction over the counterclaims by virtue of the Foreign Trade Antitrust Improvement Act of 1982 ("FTAIA"), 15 U.S.C. § 6; (2) that LATAM has not demonstrated any antitrust injury; and (3) that LATAM has not sufficiently shown the substantive elements of Sections 1 and 2 of the Sherman Act, due to deficiencies in its definition and establishment of the relevant market. As the second of these arguments is dispositive, we will address it first and then discuss only tangentially the remaining arguments.

*Antitrust Injury*

■■■ Simply put, this is not an antitrust case. The enactment of the antitrust laws was a response to "congressional concern with the protection of competition, not competitors." *Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962). Accordingly, "[i]t is not enough to assert 'simply that [a plaintiff] has been harmed as an individual competitor;' rather, [a plaintiff] must suggest how [defendants'] 'activities have had [some] adverse impact on price, quality, or output of . . . services offered to consumers in the relevant market.'" *Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1092 (6th Cir.1996) (quoting *Capital Imaging Assocs. v. Mohawk Valley Medical Assocs.*, 996 F.2d 537, 547 (2d Cir.), *cert. denied*, 510 U.S. 947, 114 S.Ct. 388, 126 L.Ed.2d 337 (1993)). To allege sufficiently the elements of a federal antitrust violation, "[p]laintiffs must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to pre-

vent and that flows from that which makes defendants' acts unlawful." *Valley Products Co. v. Landmark*, 128 F.3d 398, 402 (6th Cir.1997) (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977)) (emphasis in original). GE contends that one failure of LATAM in regard to showing antitrust injury is that it "allege[s] nothing more than restriction on the movement of articles in commerce, not injury to consumers." Additionally, however, the concept of antitrust injury requires a plaintiff to demonstrate that his alleged injuries are the result of anticompetitive behavior. Claims of injury arising from antitrust violations are compensable only when "the injury flows directly from the unlawful act." *Axis, S.p.A v. Micafil, Inc.*, 870 F.2d 1105, 1107 (6th Cir.), *cert. denied*, 493 U.S. 823, 110 S.Ct. 83, 107 L.Ed.2d 49 (1989). If a plaintiff "would have suffered the same injury without regard to the allegedly anticompetitive acts of Defendants, Plaintiff has not suffered an antitrust injury." *Hodges v. WSM, Inc.*, 26 F.3d 36, 38 (6th Cir.1994). "The Sixth Circuit. . .has been reasonably aggressive in using the antitrust injury doctrine to bar recovery where the asserted injury, although linked to an alleged violation of the antitrust laws, flows directly from conduct that is not itself an antitrust violation." *Valley Products*, 128 F.3d at 403.

In *Valley Products, supra*, a manufacturer of soap and hotel amenities brought an antitrust suit against hotel franchisors who denied the manufacturer permission to use the franchisors' trademarks after two other soap manufacturers were granted a "preferred supplier" status. The plaintiff alleged the existence of an illegal tying arrangement in violation of the antitrust laws, but the court upheld the district court's observation that the "plaintiffs' exclusion from access to defendants'

license, and their resulting inability to produce logoed amenities, is what has caused them harm, not their exclusion based on the illegal tie. The plaintiffs would have suffered the identical loss if their contracts with [the franchisors] had simply been terminated, even if no preferred vendor agreement... existed." *Id.* at 403 (quoting *Valley Products v. Landmark,* 877 F.Supp. 1087, 1093–94 (W.D.Tenn.1994)). Bolstered by the reasoning of *Valley Products* and similar cases, GE argues:

> [W]hether GE engaged in the alleged anticompetitive activity or not, the effect on the market that [LATAM] complains of—a reduced ability of other American appliance makers to sell their products in Peru—would have been exactly the same. Latam would have been unavailable to these other manufacturers whether Latam stayed with GE and thrived, or whether its contract expired and it was destroyed. Thus, the injury Latam alleges does not depend in any way on GE's alleged anticompetitive actions. It is not, therefore, antitrust injury. And this is not an antitrust case.

GE also characterizes the deposition testimony of LATAM's antitrust expert, Lawrence Goldberg, as having admitted this point.[1]

In response, LATAM addresses GE's argument regarding its failure to allege injury to consumers:

> In this case, the injury implicated by Latam's claim is felt by participants in the market for export to Peru of U.S.-made appliances. While these firms have no economic interaction whatsoever with U.S. consumers or the U.S. domestic marketplace..., Congress has, nevertheless, made it abundantly clear that

the U.S. export market falls within the protection of U.S. antitrust laws.... In sum, antitrust injury can, indeed, exist in cases where export commerce is restrained, even though no effect is felt on domestic prices or quality.

Latam cites cases in support of this proposition, concluding that "[g]iven Congress' subsequent enactment of the FTAIA, thereby expressly granting of [sic] jurisdiction over matters affecting 'export commerce'—matters that, necessarily, will have no 'spillover' effect on consumer prices and quality—it must follow that cases seeking to remedy harm to this 'export commerce' necessarily involve 'injury of the type the antitrust laws were intended to prevent.' [quoting *Brunswick, supra*]."

■ Although this reasoning indeed speaks to one facet of GE's argument regarding antitrust injury—LATAM's alleged failure to assert injury to consumers—it does not confront GE's observation that the injury to LATAM was not suffered by virtue of the harm LATAM alleges to American appliance manufacturers. Nor does it answer GE's contention that, had GE not allegedly destroyed LATAM, but rather LATAM remained with GE and thrived, LATAM—the "trade bridge" which could have enabled other U.S. appliance manufacturers to compete with GE in the export market to Peru—would have been similarly unavailable to these other American manufacturers. LATAM does confront this argument in another section of the response (purportedly devoted to GE's jurisdictional arguments regarding the FTAIA):

---

1. "Q: So in either case, from the perspective of another U.S. manufacturer of appliances, Latam was not available to serve as its distributor in Peru, is that correct?

A: That may have been the case but there was no choice." (Goldberg deposition at 154).

GE ignores Latam's repeated clarifications...that its claim does not arise out of anything that GE did, or did not do, in connection with the appliance distributorship. Thus, GE could have renewed the appliance distributorship or terminated it, allowing Latam to freely associate with other appliance manufacturers, and it would have faced no antitrust liability. Latam's case, on the other hand, is based upon GE's elimination of Latam as a participant in the U.S. export market.... GE's manipulation of its relationship with Latam so as to adversely affect Latam's ability to pursue an association with another U.S. appliance manufacturer who desires to export his product to Peru is actionable under the Sherman Act. *E.g. Sky View* [sic] *Dist., Inc. v. Miller Brewing Co.*, 620 F.2d 750, 752 (10th Cir.1980) ("the complaint sets forth more than '*mere*' substitution of a distributorship and asserts that the substitution of Sky View [sic] was designed to adversely affect Miller's competitors and that in fact it did stop Miller's competition.") (Emphasis in original.)[2]

First of all, the court notes the extremely speculative nature of LATAM's argument; as GE has noted, nowhere does LATAM offer evidence that other appliance manufacturers actually *sought* to utilize LATAM and were denied, or that, during LATAM's distributorship with GE, LATAM did "freely associate" with other manufacturers. On the whole, LATAM's

proof as to the anticompetitive effect it alleges is deficient. This deficiency became apparent in the court's analysis of GE's jurisdictional arguments, discussed below, in which GE challenged the opinion of LATAM's antitrust expert (Goldberg) that GE's alleged conduct produced "direct, substantial and reasonably foreseeable" effects on the U.S. appliances export market to Peru.

■ Two principles enunciated by the Sixth Circuit in regard to granting summary judgment are that (1) "the respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment' " and (2) "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Betkerur, M.D. v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir.1996). While the court is aware that it is not required to comb the record in order to make LATAM's arguments for it, the court did examine the content of the *Daubert* motions in an effort to lend substance to the cited conclusions of LATAM's expert regarding the effect of GE's alleged destruction of LATAM on the U.S. market for export of appliances to Peru. After an examination of these more specifically alleged effects, the court's opinion as to the deficiency of LATAM's pleadings on this subject remains unaltered.[3]

---

**2.** *Skyview, supra,* apparently did involve a theory similar to that which LATAM advances; in *Skyview,* an independent distributor alleged that the brewing company had encouraged it to overexpand, then terminated the distributorship and granted an exclusive distributorship to another distributor it had just formed, a substitution designed to impede the brewing company's competitors, and that did in fact harm competition. The district court had dismissed the complaint because it thought the

allegations regarding any conspiracy between the brewing company and the distributor it formed to replace the plaintiff were insufficient; the Tenth Circuit, noting the standard on a motion to dismiss, held this to be error. *See Skyview,* 620 F.2d at 752.

**3.** LATAM's response to GE's motion to exclude the testimony of its proferred antitrust expert summarizes these effects as follows:

Thus, Prof. Goldberg learned that:

The weaknesses in LATAM's pleading of antitrust injury, moreover, are driven home in GE's reply, which focuses first on this element with citation to *Tennessean Truckstop, Inc. v. NTS, Inc.*, 875 F.2d 86 (6th Cir.1989). In this case, the Sixth Circuit enunciated that, pursuant to Supreme Court case law, "the antitrust plaintiff 'must show (1) that the alleged violation tends to reduce competition in some market and (2) that the plaintiff's injury would result from a decrease in that competition rather than from some other consequence of the defendant's actions.'" *Tennessean Truckstop*, 875 F.2d at 88 (quoting P. Areeda & H. Hovenkamp, *Antitrust Law* ¶ 334.1b at 299 (1988 Supp.)). Using this case, GE correctly and succinctly points out that "the harm Latam identifies in the market is not harm to Latam but harm to other American appliance manufacturers. Yet Latam has not even suggested how its damages are the result of the hypothetical harm to Whirlpool,

- Latam's imports for GE during 1996, its last "non-impaired" year, was 8,860 units, 64% of the U.S. exports in that year (Goldberg Table 1–2.)
- nine U.S. manufacturers that were represented in Peru in the 1990's were no longer represented in 2000.
- The total U.S. exports to Peru decreased during the 1996–2000 period, from 13,-869 units in 1996 to 2,808 in 2000. (Goldberg Table 13–1)
- The total Non–GE U.S. exports to Peru decreased 50% during the 1996–2000 period, from 5,009 units in 1996 to 2,618 in 2000. (Goldberg Table 13–1)
- three of the four distributors who had been exporting product into Peru in 1992 and were still doing so in 2000 had suffered some type of financial distress and reorganization during the 1996–2000 period (Goldberg Depo. at 63–64).
- the U.S. exports from the three manufacturers served by these three distributors decreased a full 70% during the 1996–2000 period, from 4,472 in 1996 to 1,345 in 2000. (Goldberg Table 13–1)
- During the same four years the sales of the fourth manufacturer (Frigidaire),

Maytag, Frigidaire, and the other manufacturers whose case Latam seems to want to pursue, as if it were some sort of *parens patriae*." LATAM has not adequately answered this argument regarding antitrust injury, and the court fails to see how "the plaintiff's injury would result from a decrease in... competition rather than from some other consequence of [GE's] actions." *Id.* at 88. Accordingly, we find that this necessary prerequisite of its antitrust claims is not met, requiring the dismissal of Counts 6 and 7 of the counterclaims.

*Jurisdiction and Substantive Elements*

■ Due to our holding that antitrust injury is lacking and is therefore dispositive of LATAM's antitrust counterclaims, we will assume, for purposes of this motion for summary judgment, that LATAM meets all the other arguments raised by GE. The court notes, however, that GE's argument that this court lacks jurisdiction over LATAM's counterclaims because the

whose distributor had *not* failed, grew from 537 to 1,273 (Goldberg Table 13–1), indicating that a market still existed for such U.S. luxury niche goods if only they can reach Peru and ruling out the likelihood that the decline in the U.S. export trade was due to some the [sic] other overarching economic factors.

Initially, it should be noted that some of these factors appear to support GE's contention that the U.S. export market for appliances to Peru remained competitive, rather than bolstering LATAM's assertion that the market suffered. For example, the third and fourth bullet points, regarding an alleged decrease in U.S. exports to Peru, when taken together, appear to reflect that GE exports to Peru decreased at a more substantial rate than non-GE exports. Further, the last bullet point, which reveals that Frigidaire's sales more than doubled during the relevant period, severely undercuts LATAM's theory of antitrust injury. LATAM's explanation that Frigidaire's distributor did not fail (thus facilitating the sales increase) explicitly contradicts its assertion of antitrust injury by virtue of other manufacturers' being deprived of LATAM's services.

Sherman Act does not apply to conduct which affects only foreign markets is persuasive. The FTAIA requires a "direct, substantial and reasonably foreseeable effect on the domestic marketplace *and* that this anticompetitive effect on the domestic marketplace gave rise to their injuries." *Ferromin International Trade Corp. v. UCAR International, Inc.*, 153 F.Supp.2d 700, 705 (E.D.Pa.2001) (emphasis in original). GE's contention that neither of these prongs is met has merit.[4]

Finally, GE argues that LATAM has not sufficiently shown the substantive elements of Sections 1 and 2 of the Sherman Act, due to deficiencies in its definition and establishment of the relevant market.[5] If this court had not already decided that

---

4. LATAM simply cites its expert's *conclusions* that the effect on U.S. export trade caused by GE's alleged destruction of LATAM is "direct, substantial, and reasonably foreseeable," without ample factual foundation. LATAM has not come close to alleging the type of substantial effect on a U.S. market that existed in *Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694 (5th Cir.1999). Even were this court to have found that LATAM had met the antitrust injury requirement, the failure to cite or argue anything concrete in response to a motion for summary judgment on this requirement of the FTAIA would be fatal to LATAM's antitrust counterclaims. Without regard to the veracity of these alleged effects, argued by LATAM, *see supra*, LATAM has done nothing to show their directness, substantiality, or reasonable foreseeability with regard to the FTAIA.

As to the second prong of the FTAIA, the parties disagree as to whether LATAM's alleged injuries must "arise from" anticompetitive effects on U.S. commerce. *Compare Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420 (5th Cir.2001) (imposing such a requirement) with *Kruman v. Christie's International PLC*, 284 F.3d 384 (2nd Cir.2002) (apparently declining to impose such a requirement). This court declines to resolve this question unnecessarily. The court notes, however, that LATAM mistakenly approaches this issue. First, it erroneously relies upon the tautological assertion of its expert, Goldberg, who says (without factual foundation), that "the antitrust damage to the other U.S. manufacturers is related to the destruction of Latam and in that sense it is very closely related... Latam's destruction prevented it from dealing with these other manufacturers, leading to the damage to the market. Now, Latam was damaged personally by this and it's all intertwined together with the antitrust and anticompetitive effects." (Goldberg deposition, at 121–22).

Secondly, LATAM is not claiming that the anticompetitive effects felt by U.S. appliance manufacturers gave rise to its injuries; rather, it is claiming that its destruction led to the anticompetitive effects—the reduced ability of U.S. manufacturers to export their product to Peru. Thus, the case law cited by LATAM in an effort to show that it meets the *Den Norske* test is inapposite.

5. GE challenges LATAM's definition of the relevant market in this case as the market for the export of U.S.-manufactured appliances for distribution in Peru, contending that LATAM has made no effort to determine which commodities are reasonably interchangeable by consumers, and, indeed, that LATAM ignores the fact that antitrust law condemns only that conduct which is harmful to consumers. GE cites case law in support of these arguments, and excerpts from the deposition of LATAM's expert in arguing that he ignores consumers in his definition of the relevant market. GE also contends that the market is competitive, which undercuts any assertion that GE possessed market power sufficient to control prices and exclude competition.

In response to these arguments, LATAM states that its market definition is appropriate to this case, that GE's arguments are merely *Daubert* complaints about the methodology employed by LATAM's expert (Goldberg), and that these issues are more fully briefed in the *Daubert* pleadings. The court strongly condemns this tactic, whereby LATAM deflects its response to a motion for summary judgment to other pleadings (and thereby effectively increases the page limits therefor, despite this court's admonition in the past that no extensions of either page limits or deadlines would be granted). In an effort to give LATAM the benefit of the doubt, however, the court has reviewed the arguments contained in the *Daubert* motions regarding both GE and LATAM's antitrust experts.

LATAM's antitrust claims fail as a matter of law, we would be required to take up the question of which approach is most appropriate to LATAM's theory of the case at this time. As we have shown from the foregoing, however, we need not address the arguments contained in the *Daubert* motions regarding the experts Goldberg and Harris, and we need not conduct the hearings requested by the parties with regard to them. Accordingly,

**IT IS ORDERED** that GE's motion for summary judgment with regard to Counts 6 and 7 of LATAM's Second Amended Counterclaim is **GRANTED**.

**IT IS FURTHER ORDERED** that GE's motion to exclude the testimony of Lawrence Goldberg and LATAM's motion to exclude the testimony of Barry Harris are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that, as the *Daubert* motions regarding Messrs. Goldberg and Harris have been denied as moot, there is no need to conduct the parties' requested hearings as to them, currently set for July 1, 2002. All other proceedings remain scheduled for July 1, 2002, unless the parties are otherwise notified by order of the court.