**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 04a0107n.06
Filed: November 18, 2004

No. 03-6157

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| CTUNIFY, INC., )<br><br>**Plaintiff-Appellant,** )<br><br>v.<br><br>NORTEL NETWORKS, INC. AND<br>GLOBAL KNOWLEDGE<br>NETWORK, INC.,<br><br>**Defendants-Appellees.** | **ON APPEAL** FROM THE<br>UNITED STATES DISTRICT<br>COURT FOR THE MIDDLE<br>DISTRICT OF TENNESSEE<br><br>**O P I N I O N** |

**Before:  MOORE and SUTTON, Circuit Judges, and ADAMS,[*] District Judge.**

**KAREN NELSON MOORE, Circuit Judge.**  Plaintiff CTUnify, Inc. appeals from the judgment dismissing its complaint for failure to state a claim, in this antitrust action brought against defendants, Nortel Networks, Inc. and Global Knowledge Network, Inc.  For reasons set forth below, we AFFIRM the judgment of the district court.

**I.  BACKGROUND**

Nortel is a market leader engaged in the production of telephone and data systems.  Both CTUnify and Global Knowledge are corporations that provide training on the use and application of Nortel telephone and data systems.  On October 2, 2002, CTUnify filed a complaint in the United

---

[*]The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

States District Court for the Middle District of Tennessee against Nortel and Global Knowledge, alleging that Global Knowledge had entered into an exclusive training contract with Nortel to provide training on Nortel systems. CTUnify alleged that this exclusive training contract violated antitrust law in two ways: first, by impermissibly tying Global Knowledge's training services to the sale of Nortel systems; second, by impermissibly tying Global Knowledge's training services to promotional funds which Nortel promised to provide to its distributors and resellers upon purchase of a Nortel system. CTUnify contended that these tying arrangements represented an impermissible attempt by Nortel to use its market dominance in systems manufacturing to acquire greater market power in the training market. CTUnify sought damages for lost profits in the amount of $5 million, treble damages, attorney fees, and injunctive relief against the defendants.

On November 18, 2002, Nortel filed a motion to quash service and for a more definite statement. The district court denied Nortel's motion to quash service but granted its motion for a more definite statement on the ground that CTUnify's complaint failed to provide the defendants with notice of the specific statutory basis for the lawsuit.[1] CTUnify then filed an amended complaint which, although not fully remedying the complaint's deficiencies, attempted to clarify the statutory basis for CTUnify's claims.

On March 5, 2003, both defendants filed separate motions to dismiss CTUnify's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted both motions on the basis that the complaint failed to state an antitrust claim. Although the amended

---

[1]CTUnify's initial complaint merely alleged that the defendants were in violation of 15 U.S.C. § 1-26. As Nortel correctly observed, this statutory reference encompasses nearly all of antitrust law, including numerous provisions that are wholly inapplicable in this case. Appellee Nortel's Br. at 15-17.

complaint remained unclear, the district court concluded that CTUnify was attempting to assert an impermissible tying arrangement in violation of § 1 of the Sherman Act, 15 U.S.C. § 1, and § 3 of the Clayton Act, 15 U.S.C. § 14. Because the district court concluded that CTUnify had failed to allege the necessary elements for either claim, it dismissed the complaint. CTUnify then filed this timely appeal.

## II. ANALYSIS

We review de novo a district court's decision to dismiss a lawsuit for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 529 (6th Cir. 2001). In conducting our review, we "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Louisiana Wholesale Drug Co. v. Hoechst Marion Roussel, Inc.* (*In re Cardizem CD Antitrust Litig.*), 332 F.3d 896, 909 (6th Cir. 2003) (citation omitted). Although we employ a liberal system of "notice pleading," *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), the essential elements of the plaintiff's claim "must be alleged in more than vague and conclusory terms" in order to survive a Rule 12(b)(6) motion. *Found. for Interior Design Educ. Research*, 244 F.3d at 530.

### A. Alleged Violation of the Sherman Act

The Supreme Court has explained that "[a] tying arrangement is 'an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier.'" *Eastman*

*Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 461 (1992) (citation omitted). A plaintiff may bring a private antitrust action based on an illegal tying arrangement under § 1 of the Sherman Act if he can allege that: (1) the seller has "'appreciable economic power' in the tying product market"; and (2) "the arrangement affects a substantial volume of commerce in the tied market." *Id.* at 462 (citation omitted). We have also required that a plaintiff allege: (1) the seller of the tying product has a direct economic interest in the sale of the tied product, *Beard v. Parkview Hosp.*, 912 F.2d 138, 139, 142-44 (6th Cir.1990); and (2) the plaintiff has suffered an antitrust injury as a result of the tying arrangement, *Valley Prods. Co. v. Landmark, a Div. of Hospitality Franchise Sys., Inc.*, 128 F.3d 398, 402-03 (6th Cir. 1997).

In this case, the district court determined that CTUnify failed to allege a direct economic benefit to Nortel as a result of its tying agreement with Global Knowledge. CTUnify asserts that while it must prove a direct economic benefit to Nortel in order to prevail ultimately on its claims, it need not allege such a benefit in its complaint. We conclude, however, that our precedent requires that where the seller of the tying product and the seller of the tied product are different entities, the plaintiff must allege a direct economic benefit to the tying seller in order to survive a Rule 12(b)(6) motion. *See Beard*, 912 F.2d at139 (noting that there is no violation of § 1 of the Sherman Act where the tying seller receives no direct economic benefit from the sale of the tied product).

The Sherman Act condemns certain tying arrangements out of a concern that the seller is attempting to use its dominance in the tying product market to invade the tied product market. *Carl Sandburg Vill. Condo. Ass'n No. 1 v. First Condo. Dev. Co.*, 758 F.2d 203, 208 (7th Cir. 1985). Many courts, including this Circuit, have imposed an economic-interest requirement to ensure that the seller's intent is to engage in such anticompetitive business practices. *See, e.g.*, *Beard*, 912 F.2d

4

at 141-142; *White v. Rockingham Radiologists, Ltd.*, 820 F.2d 98, 104 (4th Cir.1987); *Robert's Waikiki U-Drive, Inc. v. Budget Rent-A-Car Sys., Inc.*, 732 F.2d 1403, 1407-08 (9th Cir. 1984); *Keener v. Sizzler Family Steak Houses*, 597 F.2d 453, 456 (5th Cir. 1979); *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821, 835 (7th Cir. 1978), *cert. denied*, 440 U.S. 930 (1979); *Venzie Corp. v. United States Mineral Prods. Co.*, 521 F.2d 1309, 1317-18 (3d Cir. 1975); *but see Gonzalez v. St. Margaret's House Hous. Dev. Fund Corp.*, 880 F.2d 1514, 1517 (2d Cir. 1989).

"In the usual tying arrangement, it is not difficult to establish the economic interest element because the seller of the tying product is also the seller of the tied product." *Carl Sandburg Vill. Condo. Ass'n*, 758 F.2d at 208. When the seller of the tying product and the seller of the tied product are different, however, it is more difficult to discern whether or not the tying agreement is aimed at suppressing competition. Under these circumstances, in order to make out a violation of § 1 of the Sherman Act, a plaintiff must show that the seller of the tying product derived a direct economic benefit from the sales of the tied product or service. *Beard*, 912 F.2d at 142. Absent a direct economic benefit to the tying seller from the sale of the tied product or service, the tying arrangement does not violate the Sherman Act under either the per-se or rule-of-reason analysis.[2] *Id.* at 143 (citing cases).

CTUnify's complaint lacks any allegation of a direct economic benefit to Nortel as a result of the tying agreement. CTUnify argues that "it is clear from the relationship between the Defendants as pled and alleged that Defendant, Nortel Networks, does derive a direct economic

---

[2]In the past, this court has recognized that tying arrangements may be found to violate antitrust law either under a per-se or rule-of-reason analysis. These two theories of tying analysis, however, "have, in effect, merged in recent years." *PSI Repair Servs., Inc. v. Honeywell, Inc.,* 104 F.3d 811, 815, n.2 (6th Cir.), *cert. denied*, 520 U.S. 1265 (1997).

benefit from its arrangement with Defendant, Global Knowledge, through its dominance in the market shares in the sales and training on Nortel telephone equipment and its aftermarket." Appellant Br. at 11. We are not convinced that CTUnify's complaint contains allegations which suggest such a benefit to Nortel as a result of the defendants' arrangement. Even if this claim is implied by the complaint's allegations, however, it is insufficient to satisfy the requirement of a direct economic benefit. We require that the tying seller must derive a direct financial benefit from the sale of the tied product, not merely an indirect benefit. *See id.* at 142 (no illegal tying arrangement where hospital did not receive payment from radiologist group under exclusive dealings contract); *Crawford Transp. Co. v. Chrysler Corp.*, 338 F.2d 934 (6th Cir. 1964) (no violation of antitrust law where car manufacturer did not receive payment under exclusive dealing contract with common carrier despite the fact that the tying agreement saved the car manufacturer millions of dollars).

CTUnify does not suggest that Nortel received a portion of the profits that Global Knowledge earned as a result of its services rendered. Nor does CTUnify claim that Nortel received some sort of payment in exchange for bestowing on Global Knowledge the exclusive right to provide training on Nortel systems. Instead, CTUnify merely asserts that the agreement bestowed on Nortel some type of benefit as a result of Global Knowledge's dominance in the tied product market. These allegations represent only an indirect benefit to Nortel as a result of the tying agreement and thus must fail as a matter of law.

Here, as noted by the district court, CTUnify also failed to allege that it has suffered an antitrust injury as a result of the tying arrangement necessary to survive a Rule 12(b)(6) motion. An antitrust injury is an "injury of the type the antitrust laws were intended to prevent and that flows

6

from that which makes defendants' acts unlawful." *Found. for Interior Design Educ. Research*, 244 F.3d at 530 (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). Because antitrust laws were intended to protect "competition, not competitors," *id.* (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)), it is not sufficient for the plaintiff to claim economic injuries as a competitor. *Valley Prods. Co.,* 128 F.3d at 402. Alleging an injury that is merely linked to the alleged antitrust violation is insufficient. *Hodges v. WSM, Inc.*, 26 F.3d 36, 38 (6th Cir. 1994). The plaintiff must allege "that the illegal antitrust conduct was a necessary predicate to their injury." *Id.* at 39. The Sixth Circuit in particular has been "reasonably aggressive" in dismissing cases where the injury to the plaintiff "although linked to an alleged violation of the antitrust laws, flows directly from conduct that is not itself an antitrust violation." *Valley Prods.*, 128 F.3d at 403.

In the instant case, CTUnify alleges damages of at least $5 million for lost profits and seeks injunctive relief to prevent the defendants from continued violation of antitrust law. CTUnify lost profits as a result of Nortel's decision to limit the number of training companies designated as a preferred vendor. CTUnify's injuries flow from the fact that it was not chosen to be a preferred vendor and not from any alleged tying arrangement between Nortel and Global Knowledge. Thus, CTUnify has not alleged a cognizable antitrust injury. *See Hodges,* 26 F.3d at 38 (noting that "[i]f Plaintiff would have suffered the same injury without regard to the allegedly anticompetitive acts of Defendant, Plaintiff has not suffered an antitrust injury").

More importantly, CTUnify has not concretely alleged any anticompetitive effect that the defendants' tying agreement has had on the tied market. It has not alleged any anticompetitive effect on the training market as a result of the defendants' tying agreement. Nor has it alleged that the

7

tying agreement stripped consumers of their freedom to choose among training service providers.

That CTUnify also seeks injunctive relief does little to bolster its allegations of an antitrust injury.

*Valley Prods.,* 128 F.3d at 402 ("Without antitrust injury, no private antitrust action will lie at law

or in equity."). CTUnify has therefore failed to state a claim under § 1 of the Sherman Act.

## B. Alleged Violation of the Clayton Act

Section 3 of the Clayton Act makes it unlawful

for any person engaged in commerce . . . to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities . . . on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

15 U.S.C. § 14. As the plain meaning of the statute indicates, in order for there to be a violation

under § 3 of the Clayton Act both the tying and tied products must be "goods, wares, merchandise,

machinery, supplies, or other commodities." *Id.* Section 3 of the Clayton Act does not apply if

either the tying product or the tied product is a service. *Chelson v. Oregonian Publ'g Co.*, 715 F.2d

1368, 1372 (9th Cir. 1983); *Rosebrough Monument Co. v. Mem'l Park Cemetery Ass'n*, 666 F.2d

1130, 1141 (8th Cir. 1981), *cert. denied*, 457 U.S. 1111 (1982).

CTUnify's complaint alleges that there are two impermissible tying arrangements between

Nortel and Global Knowledge. In the first, CTUnify alleges that Nortel tied the sale of its telephone

and data systems to the training services offered by Global Knowledge. In the second, CTUnify

contends that Nortel tied promotional funds promised to buyers of Nortel systems to the use of

Global Knowledge's services. In both agreements the tied product, namely Global Knowledge's

service, does not qualify as a commodity under the statute. As a result, the district court properly dismissed pursuant to Rule 12(b)(6) CTUnify's claim under § 3 of the Clayton Act.

## III. CONCLUSION

In summary, CTUnify failed to allege the necessary elements of a private antitrust claim. We therefore AFFIRM the judgment of the district court dismissing CTUnify's complaint.