PATTON ELECTRIC CO., INC., and
the Rival Company, Plaintiffs,

v.

UNITED STATES of America,
Defendant.[1]

No. Civ.A. 99–399–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 3, 1999.

Edward J. Longosz, II, Miles & Stockbridge, McLean, VA, for plaintiffs.

Leslie McClendon, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for defendant.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

Before the Court is defendant's Motion to Dismiss, or in the alternative, For Summary Judgment. Because we considered evidence outside of the pleadings and because discovery has ended in this civil action, we will treat defendant's Motion to Dismiss as a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56. For the reasons stated in open court, and for the reasons stated below, the Motion is GRANTED.

## BACKGROUND

Plaintiff Patton Electric Company ("Patton") and the Rival Company (collectively "plaintiffs") bring this action against the United States for contribution or indemnity under Virginia common law for sums

---

1. Inexplicably, the parties have added an "et al" to the defendant, however, we have determined that the United States is the sole defendant.

paid pursuant to a settlement of a lawsuit, *Wallbank v. Patton et al.*, Case No. 2:96CV677 (E.D.Va.1996). In that case, Jason Wallbank's parents sued Patton for negligence, alleging that in 1994 a Patton space heater, Model No. HF–12GT, was defective and, as result, caught fire and severely burned Wallbank, then an 11–year–old boy, while he was sleeping in his bed in his parents' home. Patton and Wallbank settled the case.

The plaintiffs admit that, in the early 1980s, Patton sold space heaters to the General Services Administration (GSA) and that those space heaters had been defectively manufactured. Plaintiffs do not dispute that the model number of the space heater that burned Wallbank was part of that defective batch. Plaintiffs further allege that GSA negligently conducted, or failed to conduct, a recall of the defectively manufactured Patton portable electric space heaters, and that GSA's negligent acts or omissions caused a defective Patton space heater to become located in Jason Wallbank's bedroom. Plaintiffs do not allege how the heater came to be located in a private home, although Wallbank's step-father stated in deposition that he bought it at Home Quarters, a local retailer.

On August 27, 1998, plaintiffs filed the instant suit in the district court for the District of Columbia. On February 24, 1999, the district court transferred this action to this Court. Count 1 of the complaint seeks contribution and Count II seeks indemnification in the amount of $ 3,138,477.74 in damages, plus interest, attorney's fees, and costs.

*ANALYSIS*

■ Defendant moves for dismissal pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction on the grounds that this action is barred under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.*, and applicable case law. The FTCA waives the federal government's sovereign immunity for negligent or wrongful acts or omissions of any government employee while acting within the scope of his office or employment. *See* 28 U.S.C. §§ 1346(b), 2674. Although the statute waives sovereign immunity for certain claims of negligence, under § 2680(a), sovereign immunity is not waived for "[a]ny claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abused." Where a claim under the FTCA falls within the "discretionary function" exception, the court lacks subject matter jurisdiction to hear the suit. Therefore, the key issue before us is whether the decision to recall and manner of recalling space heaters constitutes a "discretionary function."

■ The leading case on the "discretionary function" exception is *United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), in which the Supreme Court stated that the "exception 'protects only governmental actions and decisions based on considerations of public policy.'" *Gaubert*, 499 U.S. at 323, 111 S.Ct. 1267, *quoting Berkovitz v. United States*, 486 U.S. 531, 537, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). The Fourth Circuit has stated that the exception is designed to "protect the government from being hobbled in the discharge of its policy-driven duties by tort suits." *Baum v. United States*, 986 F.2d 716, 720 (4th Cir. 1993). The *Gaubert–Berkovitz* line of cases sets forth a two-pronged test for determining whether conduct is discretionary:

1) whether it involves an element of judgment or choice by the governmental entity; and

2) whether it is an action or decision "based on considerations of public policy."

*Gaubert*, 499 U.S. at 323, 111 S.Ct. 1267, *quoting Berkovitz*, 486 U.S. at 537, 108 S.Ct. 1954. The first prong has tended to focus on whether there is a "federal statute, regulation, or policy specifically [in place that] prescribes a course of action for an employee to follow." *Gaubert*, 499

U.S. at 322, 111 S.Ct. 1267, *quoting Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954. In the instant case, there is no such federal directive. In the absence of such a directive, discretion is presumed, and the next question is whether the choice or judgment involved is of the kind that is based upon the "considerations of public policy." The Fourth Circuit has noted:

> Rather than requiring a fact based inquiry into the circumstances surrounding the government actor's exercise of a particular discretionary function ... the reviewing court ... [should] look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy.... The focus of the inquiry is not on the agent's subjective intent ... but on the nature of the actions taken and whether they are susceptible to policy analysis.

*Baum*, 986 F.2d at 720–21, *citing Gaubert*, 499 U.S. at 324, 111 S.Ct. 1267 (internal quotation marks omitted).

Defendant relies on a host of Fourth Circuit cases, holding that the discretionary function exception applied and that the district court lacked subject matter jurisdiction to hear the case. In *Minns v. United States*, 155 F.3d 445 (4th Cir.1998), veterans and their families claimed that the government negligently inoculated and exposed soldiers to toxins and pesticides to prepare them for possible biological and chemical attack in the Gulf War, and failed to warn soldiers and their families of the potential effects of these inoculations. The soldiers who brought the suit had children with severe birth defects. The Fourth Circuit held that the "decision to warn" is "replete with choices" and requires "ascertaining the need for a warning and its cost, determining the group to be alerted, as well as the content and procedure of such notice, and ultimately, balanc[ing] safety with economic concerns." *Minns*, 155 F.3d at 452 (internal quotation marks and citations omitted). As such, the court concluded, such a decision fell "at the core of the discretionary function exception." *Id.*

In *Goldstar (Panama) S.A. v. United States*, 967 F.2d 965 (4th Cir.1992), the plaintiffs, various Panamanian businesses, sued the United States government to recover for damages caused by looting and rioting in the wake of the United States' invasion of Panama from December 1989 to January 1990. The Fourth Circuit again upheld the district court's dismissal of a tort claim based on lack of subject matter jurisdiction. The plaintiffs in that case had alleged negligent failure to provide adequate personnel, equipment, and order to protect residents and businesses in Panama City from reasonably foreseeable criminal acts. Significantly, plaintiffs pointed to no enforceable laws, treaties, rules, or regulations regarding the responsibilities of the United States government in providing police protection to the citizens of an invaded country. The court concluded that the government's decisions were within the discretionary function. *See id.* at 970.

In *Baum v. United States*, 986 F.2d 716 (4th Cir.1993), the Fourth Circuit rejected a claim that the National Park Service should be held liable for injuries allegedly caused by the negligent design, construction, and maintenance of guardrails, since (1) there were no regulations, statutes or policies mandating exactly how the guardrails should be constructed; and (2) the decisions surrounding the issues were safety related and within the discretion of the agency. "Such a decision is inherently bound up in considerations of economic and political policy, and accordingly is precisely the type of governmental decision that Congress intended to insulate from judicial second guessing through tort actions for damages." *Id.* at 724. *See also Bowman v. United States*, 820 F.2d 1393 (4th Cir.1987) (Park Service's failure to put up a guardrail was within the "discretionary function" exception.)

In the instant case, plaintiffs have not alleged that there were specific federal or GSA protocols governing the recall of a defective product. According to the GSA,

officials were unaware of any federal regulations on how to conduct a safety alert or effectuate a recall. As GSA Quality Assurance Specialist Gary Hall stated, "Each case was handled on its own. You just .... did the best you could with it." GEX 2, pp. 69–70, Hall Depo.; *see also* Hall Depo. at pp. 10–13, 16–18, 25, 28, 33–36 (describing recall process.) Because there were no regulations governing the recall, the first prong of the discretionary function test is satisfied.

As for the second prong, plaintiffs acknowledged during oral argument that the decision whether to issue a recall would be discretionary. They maintain, however, that the decisions about how to implement the recall are not "based on considerations of public policy." We disagree. Deciding when a product safety alert should be issued, how the alert should be communicated to federal customers, and how to identify, gather, and repair the defective products are essentially cost-benefit economic and political decisions. The government agency had to balance the danger of the product against the need to thoroughly investigate the allegations of defects to ensure the accuracy of the allegations, and the agency had to decide how best to deploy scarce government resources to cure the problem. Defendant also points out that the Fourth Circuit approach accords with other "failure to warn" cases from around the circuits. *See Shansky v. United States,* 164 F.3d 688 (1st Cir.1999) (National Park Service decisions regarding rehabilitation of known defect [historic steps] and lack of warning signs were discretionary); *Rich v. United States,* 119 F.3d 447 (6th Cir.1997) (citing *Baum,* Army Corps of Engineer decisions regarding design, construction, and maintenance of guardrail and posting of warning signs within discretionary function); *Chantal v. U.S.,* 104 F.3d 207 (8th Cir.1997) (National Park Service's decisions regarding maintenance of park rails, posting of warning signs and other safety precautions were within discretionary function exceptions); *Childers v. United States,* 40 F.3d 973 (9th Cir.

1994) (Park Service decisions regarding posting warning signs on trails at Yellowstone National Park were discretionary); *Cope v. Scott,* 45 F.3d 445 (D.C.Cir.1995) (Park Service's decisions regarding road maintenance on Beach Drive were discretionary).

Plaintiffs respond that defendant's decisions were in no way "based on considerations of public policy." Plaintiffs argue that GSA's function is akin to "a retailer ... purchasing product[s] at wholesale prices and distributing them to Government agencies who would buy [them]." Hall Depo. at p. 75. GSA, in effect, "was operating for Government agencies the way that Hechinger's or Home Depot would operate for personal customers." Deposition of Bryce Frey, GSA's Director of Quality Assurance Division at pp. 15–16. Plaintiffs argue that this "purchasing agent" role has no connection to public policy considerations. Moreover, plaintiffs distinguish some of the Fourth Circuit's cases and rely, instead, on authority from other circuits, such as *Cope v. Scott,* 45 F.3d 445, 446 (D.C.Cir.1995) (where and how to post warning signs on a commuter route does not implicate policy issues); *Ayala v. United States,* 980 F.2d 1342 (10th Cir.1992) (federal mine inspector's incorrect technical advice not immune); and *Gotha v. United States,* 115 F.3d 176 (3rd Cir.1997) (Navy's failure to provide safe access to office trailer, which lacked lighting and a stairway with handrails, not immune; rather, the only decisions that are protected from "second guessing" are those legislative and administrative decisions grounded in social, economic, and political policy).

Although plaintiffs cite several cases supporting their position, the law in this circuit favors a finding that the GSA's actions were discretionary. In our case, the GSA investigated the complaints about the heaters and determined they were justified. It reported the problems to a consumer testing organization, which undertook an evaluation of the problem. Pending the results of the investigation, the GSA placed a hold on further distribu-

tion of the space heaters. The GSA sent a Memo Alert to GSA warehouses placing all space heaters on hold. On March 21, 1986, it issued a government-wide mass communication to all of its federal customers, called a "Safety Alert," stating that the Patton heaters were defective and that customers should report the quantities on hand to the Office of Contract Management. The GSA then issued a supplemental safety alert on July 2, 1986, after the investigation revealed that the wiring was defective. GSA and Patton negotiated how to best repair or replace the heaters. Patton then instructed GSA customers who reported being in possession of the affected heaters to ship the heaters directly to Patton for repair. Civilian and military offices all over the country then began to ship the heaters to Patton for repair.

This course of conduct necessarily balanced economic and social welfare concerns. Although there was no consideration of major political issues or national defense matters, the GSA nevertheless had to weigh fairly substantial public health and safety concerns in determining how best to conduct the recall. The GSA considered many options, rejecting some and accepting others. It was not guided by regulations, but rather by the discretion of its employees. Furthermore, plaintiffs' contention that "Congress did not intend to immunize the government for these sorts of decisions" is not well supported. The typical FTCA case is a car crash with a government vehicle in which the government driver was negligent. Unlike the car crash case, the instant case actually involved governmental decisions. As such, and in light of the Fourth Circuit case law on this issue, we conclude that we lack subject matter jurisdiction to hear this lawsuit. Because we lack subject matter jurisdiction, we need not decide defendant's argument that it is entitled to judgment as a matter of law on the tort claim.

## CONCLUSION

Thus, for the foregoing reasons, defendant's Motion for Summary Judgment will be GRANTED and judgment will be entered in favor of defendant. An appropriate Order will issue.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.

## ORDER

For the reasons stated in open court and in the accompanying Memorandum Opinion, defendant's Motion to Dismiss, or in the alternative, For Summary Judgment is GRANTED, and it is hereby

ORDERED that judgment be and is entered in defendant's favor.

The Clerk is directed to enter judgment in favor of the United States of America pursuant to Fed.R.Civ.P. 58 and to forward copies of this Order to counsel of record.