**Rawls HAWES, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 1:03 CV 869(JCC).**

United States District Court, E.D. Virginia, Alexandria Division.

May 11, 2004.

H. Jan Roltsch–Anoll, Szabo, Zelnick & Erickson, PC, Woodbridge, VA, for Plaintiff.

Leslie McClendon, Assistant United States Attorney, Alexandria, VA, for Defendant.

## MEMORANDUM OPINION

CACHERIS, District Judge.

This matter is before the Court on Defendant United States's motion to dismiss the amended complaint or in the alternative, for summary judgment. Upon consideration of the pleadings, oral argument, and the evidence, the Court will grant Defendant's motion to dismiss for lack of subject matter jurisdiction for the following reasons.

### I. Background

Plaintiff Rawls R. Hawes filed the suit to recover damages for personal injuries resulting from alleged negligence or gross negligence of Defendant United States's agents and employees pursuant to the Federal Tort Claims Act ("FTCA").[1] Plaintiff claims that the government was negligent in maintaining an obstacle course at Quantico Marine Corps Base, and this led to a timber beam falling his leg and causing permanent damage.[2]

---

1. The claim against the United States is brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80, which is the basis for this Court's subject matter jurisdiction.

2. Plaintiff's allegations of negligence as set forth in his Amended Complaint are three-fold: (1) Defendant's agents failed to secure the plank to the support posts but left it on top of the posts in such a fashion that the obstacle appeared to be in good working order and that the danger was not open or obvious to a reasonable person; (2) Defendant's agents failed to remove the plank from the support posts when it was determined

Hawes is the son of a retired military-service member. He went to the NATO obstacle course at Quantico on January 14, 2001 with his father and younger brother for exercise. Plaintiff was using the Scale of Integrity obstacle, an obstacle composed of a twenty-two foot timber suspended seven feet above the ground resting on top of four iron posts. Unbeknownst to the Plaintiff, this obstacle was undergoing maintenance. Two days prior, marines had replaced the twenty-two foot timber on the obstacle. They had not bolted it on. Instead, they placed four orange cones on top of the timber or around the obstacle. While exercising on this obstacle, the large timber fell on Plaintiff's leg. The bones of the leg were broken and several reconstructive surgeries were undertaken.

Defendant United States has moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) or in the alternative, for summary judgment. In its motion to dismiss for lack of subject matter jurisdiction, the Government insists that it does not waive sovereign immunity.[3] It argues that the discretionary function exception to the FTCA applies here. In particular, the government alleges that two discretionary functions are involved. First, the maintenance decisions concerning "military unique equipment" implicate a policy decision balancing military training against limited maintenance resources. Second, the area around the obstacle course involves recreation, and balancing outside users needs with military purposes

is based on a policy decision under 28 U.S.C. § 2680(a).

Hawes, in response, argues that the discretionary function exception does not apply. He contends that the actual performance of maintenance after the decision to start repair and the inadequate warning does not involve any permissible exercise of policy judgment. This motion is currently before the Court.

## II. 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

### A. Standard of Review

The determination of jurisdiction is a threshold issue, requiring the Court to resolve the government's motion to dismiss at the outset. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (internal quotations omitted)). In ruling on a 12(b)(1) motion, the Court is free to consider and to weigh evidence outside of the pleadings to determine its power to hear the case. See Williams v. United States, 50 F.3d 299, 304 (4th Cir.1995).

The burden is on the Plaintiff to refute the discretionary function exception. See Hostetler v. United States, 97 F.Supp.2d 691 (E.D.Va.2000)(stating when the United States asserts discretionary function exception as bar to liability under Federal Tort Claims Act, burden is on nonmoving

---

that it could not be secured; and (3) Defendant's agents failed to provide adequate warnings of the hazard they had created (Am. Compl. ¶¶ 12–16, 20–26).

**3.** Because the Court finds that there was no subject matter jurisdiction, the Court does not address the summary judgment motion. During the hearing, the government stated that

the summary judgment motion only dealt with the issue of the discretionary function exception. The Fourth Circuit recognized that the proper practice for purposes of considering exceptions to the FTCA is dismissal for want of jurisdiction under Rule 12(b)(1), as opposed to granting summary judgment under Rule 56. Williams v. United States, 50 F.3d 299, 304 (4th Cir.1995).

party to allege facts that would establish that exception does not apply, and which would support a finding that challenged actions are not kind of conduct that can be said to be grounded in policy of regulatory regime); *but see* 14 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3658.1 (finding most courts have concluded that the burden of proving the applicability of the discretionary function exception falls upon the United States).

### B. Analysis

The key issue before the Court is whether the decision to discontinue repair on the obstacle and leave the plank unfastened with only orange cones and an email to executive officers as a warning constitutes a "discretionary function." For the following reasons, the Court concludes that the discretionary function exception applies in this case.

### 1. Discretionary Function Exception

■ Under the FTCA, the Government waives its sovereign immunity with respect to certain torts committed by government employees acting within scope of their employment. 28 U.S.C. § 1346(b). However, the FTCA contains an exception to this broad waiver of immunity for:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance

or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).[4] This means that the discretionary-function exception exempts "acts of discretion in the performance of governmental functions or duty [,] ... [and that] [n]ot only agencies of government are covered but all employees exercising discretion." *Dalehite v. United States,* 346 U.S. 15, 33, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) (quotation and citation omitted).

■ The Supreme Court has established a two-prong analysis for identifying protected discretionary functions. First, when evaluating a claim under FTCA, a court must inquire as to whether the governmental action complained of "involves an element of judgment or choice" rather than mandatory duties. *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); *see also United States v. Gaubert,* 499 U.S. 315, 323, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Williams v. United States,* 50 F.3d 299. Second, a court must determine whether the choice or judgment is one "susceptible to policy analysis." *Gaubert,* 499 U.S. at 325, 111 S.Ct. 1267.

### 2. Application of the Test

#### a. First Prong

Because Plaintiff admits that no federal standard directly governs the maintenance and repair of the obstacle course,[5] the

---

4. The purpose of the FTCA and the discretionary function exception is "to balance Congress's desire to allow redress of injuries suffered through the negligence of government actors against the need to protect the government from being hobbled in the discharge of its policy-driven duties by tort suits." *Baum v. United States,* 986 F.2d 716, 720 (4th Cir. 1993).

5. The Plaintiffs response states:

> ... such internal rules and regulations have binding effect on Plaintiff and are irrelevant to the determination of the case. Pl. Resp. ¶ 7 at 7.

Plaintiff does not dispute that the Marine Corps did not have specific regulations requiring the posting of signs... *Id.* ¶ 11 at 7.

Court does not consider the applicability of the mandatory standard element of the discretionary function exception.[6] *Baum v. United States*, 986 F.2d 716, 720 (4th Cir.1993) ("The inquiry boils down to whether the government conduct is the subject of any mandatory federal statute, regulation, or policy prescribing a specific course of action."). Thus, the decision on maintenance is discretionary. Therefore, the Court addresses only the issue of whether considerations of public policy were the basis for decisions regarding the repairs to the obstacle.

### b. Second Prong

■ Plaintiff argues that the discretionary exception does not apply. Hawes's main contention is the negligence claims relate not to the policy decision to repair the obstacle but instead pertain only to the actions and decisions made during the course of repair. The Court will first review Fourth Circuit case law, then address both of the government's discretionary function arguments.

### I. Fourth Circuit Precedent

The Fourth Circuit has consistently held that the discretionary function exception is a broad protection for the United States. In *Bowman v. United States*, 820 F.2d 1393 (4th Cir.1987), the court held that the government's alleged negligence in failing to place a guardrail along the embankment of the Blue Ridge Parkway fell within the discretionary function exception to the FTCA. In so ruling, the Fourth Circuit stated that:

> [w]hether that decision grew out of a lack of financial resources, a desire to preserve the natural beauty of the vista, a judgment that the hazard was insuffi-

cient to warrant a guardrail, or a combination of all three is not known. What is obvious is that the decision was the result of a policy judgment. One can argue that another policy, which places greater emphasis upon safety, is more desirable. However, by the discretionary function exception, Congress intended to prevent courts from second guessing federal policy.

*Id.* at 1395. In *Baum*, the Fourth Circuit went even further, and opined:

> [W]e are of the opinion that the Park Service's judgment in this regard falls squarely within the discretionary function exception as do its decisions with respect to design and construction. The decision of how and when to replace a major element of a substantial public facility is, like the decisions involving design and construction, at bottom a question of how best to allocate resources. Such a decision is inherently bound up in considerations of economic and political policy, and accordingly is precisely the type of governmental decision that Congress intended to insulate from judicial second guessing through tort actions for damages.

*Baum*, 986 F.2d at 724.

A similar rationale has been employed by the Fourth Circuit in *Minns v. United States*, 155 F.3d 445 (4th Cir.1998). In *Minns*, the plaintiffs complained of the military's failure to warn servicemen of the dangers inherent in certain inoculations and toxins to which they were exposed in preparation for the Gulf War. *Id.* at 447. These substances were later linked to birth defects in the children of these servicemen. *Id.* Relying on the discretionary function exception, the *Minns* court found in favor of the government stating that the

---

**6.** The government also presents evidence that there were no Marine Corps safety rules or regulations which required warning the general public about repair (Govt. Ex. 65 Harke Declaration ¶ 9).

failure to warn implicated policy decisions. *Id.* at 452. The *Minns* Court found that the protected decision to expose the servicemen to these substances initially was closely related to the subsequent "decision" not to warn of any possible ill effects that might result as a consequence of such exposure. *See id; see also Smith v. Washington Metro. Area Transit Auth.,* 290 F.3d 201, 205 (4th Cir.2002) (finding decision to leave the escalator disassembled to await replacement part and stop third escalator so it could be used as either up or down stairway was a discretionary function); *Goldstar (Panama) S.A. v. United States,* 967 F.2d 965, 970 (4th Cir. 1992) (holding discretionary function exception applies to government's decision regarding security measures necessary to protect Panamanian businesses in wake of U.S. occupation); *Hibble v. United States,* 133 F.3d 915, 1998 WL 2882, *2 (4th Cir. Jan.7, 1998)(unpublished) (stating that decisions regarding leaf removal, the maintenance and repair of grounds and walkways, and the posting of warning signs are tied to a variety of public policy considerations); *Patton Elec. Co., Inc. v. United States,* 64 F.Supp.2d 580, 580 (E.D.Va. 1999) (holding that decision by GSA to recall and manner of recalling space heaters was a discretionary function); *Alderman v. United States,* 825 F.Supp. 742 (W.D.Va.1993) (dismissing allegations that government should have posted signs along parkway pursuant to the discretionary function exception).[7]

### ii. Government's Policy Arguments

In the instant case, the government alleges that two discretionary functions are involved: (1) the creation and implementation of safety protocols for the use and maintenance of military unique equipment, operations, and systems; and (2) the development and administration of a recreational program at Quantico. Under the first function, the government cites regulations giving it discretion to develop and enforce safety rules pertaining to its uniquely military equipment. (Govt.Ex. 47, 54). Thus, the government contends that it was exercising its discretion when the unit commander requested that maintenance be conducted to ready the course for military training, when the commander emailed all executive officers that the course was closed, and when the range maintenance crew allocated their resources. In making these decision, the government argues that it was balancing the military's training needs, availability of scarce economic resources, and the reasonableness of warning expected users. Under the second function, the government contends that base officials consider and balance the training mission of the base, desire for recreational use of the base, minimizing risk, costs, and the effect on the environment. In sum, the government asserts that these decisions are based on military, economic, environmental, and social policies.

Hawes, in response, attempts to narrow down the specific actions involved. He argues that government's negligence occurred during the course of the maintenance and does not contest the decision to undertake maintenance. He states that

---

7. "Though the purpose underlying the discretionary function exception is well accepted, courts have encountered some difficulty in applying its rather general terms to the myriad of fact patterns that predictably present themselves as litigants attempt to measure governmental conduct by the measuring stick of state tort law." *Baum v. United States,* 986 F.2d 716 (4th Cir.1993)(noting that the statute itself does not define which governmental functions are to be deemed to be discretionary, and therefore outside the scope of the FTCA).

the decisions by the personnel at the course during January 12, 2001 must be examined. He argues that the both the failure to order the proper size of bolts to attach the new plank and the inadequate warning are not based on policy.

The Plaintiff relies on *Indian Towing*,[8] a 1954 Supreme Court decision, case law from other circuits, and he attempts to distinguish the facts from the Fourth Circuit decisions. In particular, Plaintiff asserts that this case is similar to *Gotha v. United States*, 115 F.3d 176, 181 (3d Cir. 1997). There, the Third Circuit held that the Navy's failure to provide safe access to an office trailer on one of its ranges (by installing a handrail and adequate lighting) did not fall within the discretionary function exception. The court observed that such actions are

> hardly the stuff that implicates the Navy's mission to provide a defense to the Nation or to enforce its diplomatic efforts .... This case is not about a national security concern, but rather a mundane, administrative, garden-variety, housekeeping problem that is about as far removed from the policies applica-

ble to the Navy's mission as it is possible to get.

115 F.3d at 181.[9]

Hawes argues that the Fourth Circuit cases concern different facts. In those cases, Hawes states that the government never directed its agents to perform repairs creating a non-obvious hazard and then left the hazard with an inadequate warning. For example, *Bowman* involved discretion in installing a guardrail. 820 F.2d 1393. *Baum* also involved a guardrail which was considered major element of a substantial public facility. 986 F.2d 716. *Hibble*, an unpublished case, dealt with decision to not maintain a sidewalk. 1998 WL 2882 at *2. However, some Fourth Circuit cases directly dealt with the duty to warn. *See Minns*, 155 F.3d at 452 (stating a failure to warn was protected under the exception); *Patton Elec.*, 64 F.Supp.2d at 580 (deciding when a product safety alert should be issued, how the alert should be communicated to federal customers, and how to identify, gather, and repair the defective products are essentially cost-benefit economic and political decisions).

8. *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). The plaintiff in *Indian Towing* sued the government for failing to maintain a lighthouse in good working order. The Court stated that the initial decision to undertake and maintain lighthouse service was a discretionary judgment. *See id.* at 69, 76 S.Ct. 122. Thus, if the agency had instead exercised its discretionary judgment to decline such an undertaking, the government would be insulated from tort liability. The Court in *Indian Towing* held, however, that the failure to maintain the lighthouse in good condition subjected the Government to suit under the FTCA, because "[t]he latter course of conduct did not involve any permissible exercise of policy judgment." *Berkovitz*, 486 U.S. at 538 n. 3, 108 S.Ct. 1954. Hawes attempts to use this case to state that the failure by agency employees to exercise ordinary care in carrying out an undertaking that the government agency willingly

undertook is not protected by the discretionary function exception. However, *Indian Towing* is not directly on point. In that case, the government conceded that the maintenance of the lighthouse did not fall within the discretionary function exception and the opinion of the Court does not discuss that aspect of the FTCA. *See Baum*, 986 F.2d at 723 (stating that the Fourth Circuit does not rely on *Indian Towing* as precedent under the discretionary function exception).

9. Hawes also disputes that the obstacle is military unique equipment. For example, boy scout troops and marine family members use the equipment at times. (Pl.Ex. 1). Furthermore, Hawes presents information showing that the obstacle itself is hardly unique to the military because the course is similar to civilian obstacle courses. (Pl.Ex. 4).

The Court shares Plaintiff's concerns that the discretionary function exception should not be applied too broadly immunizing almost all governmental activity from suit under the FTCA. In a footnote of *Gaubert,* the Court states:

Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish. If one of the officials involved in this case drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not apply. Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy.

*Gaubert,* 499 U.S. at 325 n. 7, 111 S.Ct. 1267. This analysis should not be a "toothless standard that the government can satisfy merely by associating a decision with a regulatory concern." *Cestonaro v. United States,* 211 F.3d 749, 755 (3d Cir.2000).[10]

That said, the Fourth Circuit's jurisprudence still encompasses the type of action in the instant case. The government listed specific policy rationale for its decision and provided evidence supporting that rationale. It discusses the balancing of many technical, military, and even social considerations, including specifically the trade-off between greater safety and greater combat effectiveness. In response, Hawes presented evidence that the obstacle course is not military unique equipment and that non-military personnel use the site. This evidence, however, is not dis-

positive. Even if the obstacle is not military unique equipment, it was used predominately for military uses.

In the Court's review, it does not look to whether the government actually balanced these assorted considerations, but whether the government's decisions was of a type that is typically grounded in such considerations. *See Baum,* 986 F.2d at 720–21; *Minns,* 155 F.3d at 451–52 (holding that "decisions that take place in the administration of a policy decision are also protected—even if an abuse of discretion—so long as they are judgments based on policy considerations"). Under the Fourth Circuit broad view of the discretionary function, the decision to stop the maintenance halfway completed, leaving the plank on the posts, even if there was no adequate warning, is tied to the exercise of judgment based upon considerations of public policy. "Once a court concludes that a government agent exercises discretion, if that discretion is exercised in the course of carrying out the agent's policy-driven duties, then the discretionary function exception will cover the agent's actions." *Estate of Bernaldes v. United States,* 877 F.Supp. 301, 307 (W.D.Va.1995) (citing *Baum,* 986 F.2d at 721).

In the case at hand, the Plaintiff's arguments do not demonstrate that the acts complained of fall outside of that broad scope. "Judicial intervention in such decisionmaking through private tort suits would require the courts to 'secondguess' the political, social, and economic judgments of an agency exercising its regulatory function. It was precisely this sort of judicial intervention in policy-making that the discretionary function exception was

10. Furthermore, the discretionary function framework encourages the government to not issue regulations and guidelines. *See Baum,* 986 F.2d at 724 (Shedd J. concurring) ("As a result, government agencies may well be discouraged from enacting mandatory regulations governing the design and construction of infrastructure in order to claim immunity under the umbrella of the discretionary function exception.")

designed to prevent." *United States v. Varig Airlines,* 467 U.S. 797, 820, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) (discretionary function exception protected FAA employees in executing spot-check inspection program because the program "specifically empowered [employees] to make policy judgments regarding the degree of confidence that might reasonably be placed in a given manufacturer, the need to maximize compliance with FAA regulations, and the efficient allocation of agency resources"). In the present case, then, all of the allegedly negligent actions taken by the Defendant fall within the discretionary function exception and do not form a proper basis for a lawsuit under the FTCA. The matters complained of are simply not actionable. As a result, this Court finds that it has no subject matter jurisdiction over this action and must dismiss it accordingly.

### IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's motion to dismiss. An appropriate order will follow.

### *ORDER*

For the reasons stated in the accompanying Memorandum Opinion, it is hereby ORDERED that:

(1) Defendant United States's motion to dismiss for lack of subject matter jurisdiction is GRANTED;

(2) the Clerk of the Court shall forward copies of this Order to all counsel of record.

This Order is final.